# Helmetag's Adm'r *v.* Miller.

*Bill in Equity by Administrator of Assured, against Assignee of Policy of Life Insurance.*

1. *Life insurance; insurable interest necessary to uphold policy.*—A policy of insurance taken out by one person on the life of another, in which he has no insurable interest, is illegal and void on grounds of public policy.

2. *Assignment of policy; rights and interest of assignee.*—An assignment of a policy, taken out by a person on his own life, is within the principle and reason which render void an original policy on the life of a person in whom the person taking out the policy has no insurable interest; and whether it be absolute or conditional (as collateral security), it is only valid in the hands of the assignee to the extent of the money paid by him, with interest thereon.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 27th November, 1883, by Mrs. Amelia Helmetag, as the administratrix of the estate of her deceased husband, Frederick W. Helmetag, against John W. Miller; and sought an account from the defendant of moneys which he had received on a policy of life-insurance assigned to him by said decedent in his life-time, and a decree in favor of the complainant for the balance which might' be found in his hands, after allowing the amount which he might be entitled to retain. The policy was for $5,000, and was dated October 1st, 1867; being taken out by said Helmetag, on his own life, in the Equitable Life Assurance Society of the United States. The annual premium was $134.80, payable in quarterly installments; and the policy was, by its terms, made payable " to said Frederick W. Helmetag, his executors, administrators, or assigns." The bill alleged that said Helmetag paid the premiums on the policy, quarterly as stipulated, until some time in May, 1877, when, being hard pressed for money, he hypothecated it to the defendant for a loan of money, about $100, and afterwards obtained, from time to time, additional loans on its security, all amounting to about $750; that the defendant took a written assignment of the policy, which, though absolute in its terms, was intended only as collateral security for said loans; that the defendant, some time in the summer of 1880, taking advantage of the absolute terms of the assignment, and abusing his trust created by said hypothecation, sold and surrendered the policy to said insurance company,

for $2,500 in hand paid; that said F. W. Helmetag died on the 21st March, 1883, and that the defendant had never accounted with him, nor with the complainant as his administratrix, for the money so received on the sale or surrender of the policy. The complainant offered, in her bill, "to credit said defendant, upon a settlement of the matters arising out of the sale of said pledge, with all the amounts received from him by said Helmetag in the way of loans, with interest thereon, and, further to abide by and perform any and all orders of the court in the premises." The prayer of the bill was, "that said defendant may be compelled to render a true and full account of the proceeds in money by him received from the unauthorized sale of said policy; that he be charged with interest on the same from July 3d, 1880," the day on which he received the money; "that he be credited, on the taking of said account, with all loans by him made on the faith and security of said pledge, with lawful interest, whenever entitled to the same; that complainant be decreed to be entitled to the balance which may appear due to her as the personal representative of said F. W. Helmetag; and that she may have such other and further relief as the nature of the case may require," &c.

The defendant answered the bill, and admitted that the policy was at first delivered to him by Helmetag as collateral security for a loan, and that he afterwards made other loans on the faith of it; but he alleged that there was no written assignment of the policy until March 31st, 1877, when his loans amounted to about $250, and he then purchased the policy absolutely, by paying the additional sum of $525 for it. As to this assignment, the answer contained these allegations: "Respondent had advanced for said Helmetag, in paying his rent-notes and premiums, about $250, or more, with accrued interest, when, in March, 1877, he was informed that an agent of said insurance company was then in Mobile, and was trying to buy said policy from said Helmetag. Respondent then went to said Helmetag, and told him that, if he intended to sell said policy, he ought to give the preference to respondent, who had aided him, and had advanced money to him, not only to keep him from being turned out of his house, but to keep the policy alive; that the policy would have been forfeited and valueless, but for his advancing the premiums. He admitted the force of these allegations, and said that, if he sold it, he would give respondent the preference; and he further stated, that the agent had offered him $500 for it, but that he would not take it. He came to respondent, a few days after this, to negotiate for the sale; which negotiation resulted in respondent's buying said policy from him for the sum of $783.24, which included the amounts so advanced, with the interest thereon. The exact

[Helmetag's Adm'r v. Miller.]

figures respondent does not recollect, but he paid said Helmetag
$525 in cash, besides paying and extinguishing said sums so
advanced." The assignment, which was made an exhibit to
the answer, is dated March 31st, 1877, and uses these words :
"For value received, I hereby transfer, assign and set over,
unto John W. Miller, all and singular my right, title and
interest in and to policy," describing it.

On final hearing, on pleadings and proof, the chancellor dis-
missed the bill ; and his decree is now assigned as error.

HANNIS TAYLOR, and HENRY ST. PAUL, for the appellant.
The equity of the bill rests on the right of a pledgor to go
into equity for a redemption and account, and is undoubted.
Story's Equity, § 1032; Tyler on Usury, P. & L., 648 ; *Page
v. Burnstein*, 12 Otto, 664. The original pledge, or hypothe-
cation as collateral security, is admitted by the defendant; and
the alleged absolute purchase, at a subsequent time, is new
matter in avoidance, the burden of proving which rests on him.
*Forrest v. Robinson*, 2 Ala. 215 ; *Green v. Casey*, 70 Ala. 418.
But the assignment, though absolute in its terms, is shown to
have been intended only as collateral security, and the court
will so declare it.—*Robinson v. Farelly*, 16 Ala. 472 ; *Eiland
v. Radford*, 7 Ala. 724. Whether it be absolute or conditional
is immaterial, as the rights of the parties are the same in either
case—the defendant can only retain the amount of his advances,
with interest, and must account to the plaintiff for the residue.
*Cammack v. Lewis*, 15 Wallace, 643 ; *Life Insurance Co. v.
Schaefer*, 4 Otto, 457 ; *Page v. Burnstein*, 12 Otto, 664 ;
*Warnock v. Davis*, 14 Otto, 775. In this case last cited, the
court refers to the cases on which the appellee here relies, and
expressly dissents from them. That the complainant may have
the appropriate relief, under the general prayer, see *Kelly v.
Payne*, 18 Ala. 371 ; *Driver v. Fortner*, 5 Porter, 10; *Strange
v. Watson*, 11 Ala. 234.

OVERALL & BESTOR, *contra.*—The policy was, by its express
terms, made assignable ; and it was assigned, for valuable con-
sideration, in proper form. The assignment being absolute in
terms, the *onus* was on the complainant to show that it was in
fact conditional.—*Turner v. Wilkinson*, 72 Ala. 361. But the
proof shows that the transaction was an absolute sale, and was
so regarded and treated by all the parties to it ; that the assured
himself, though he lived several years afterwards, never asserted
any interest whatever in the policy ; and that the assignee,
after paying the premiums for three years, surrendered the
policy at its agreed cash valuation, as authorized by its terms.
The administratrix now attempts, on grounds of public policy,

to impeach a transaction which her intestate had full authority to make, and in which he acquiesced as long as he lived; though the bill was filed on the idea that the assignment was conditional. The principle of public policy invoked, as to wager contracts, has no application to such a case as this. "The essential thing is, that a policy shall be obtained in good faith, and not for the purpose of speculating upon the hazard of a life in which the insured has no interest."—*Life Ins. Co. v. Schaefer*, 4 Otto, 457. No taint of fraud, speculation, or other immorality, attended the inception of this policy, or attached to it during the ten years before its assignment; and the assignment, expressly authorized by its terms, contravenes no principle of public policy.—*Cunningham v. Smith*, 70 Penn. 450 ; *Eq. Life Asso. v. Patterson*, 41 Geo. 338 ; *Swick v. Home Insurance Co.*, 2 Dillon, 160 ; *Ashley v. Ashley*, 3 Sim. 149 ; *St. John v. Life InsuranceCo.*, 2 Duer, 419 ; s. c., 13 N. Y. 31 ; *Valton v. Nat. F. Life Insurance Co.*, 20 N. Y. 32 ; 15 C. B. 365 ; 1 Kay & J. 223 ; *Rawls v. Life Insurance Co.*, 36 Barb. 357 ; s. c., 27 N. Y. 282 ; *Campbell v. N. E. Mutual Ins. Co.*, 98 Mass. 381 ; *Prov. Life Ins. Co. v. Baum*, 29 Ind. 236.

SOMERVILLE, J.—No principle of the law of life-insurance is at this day better settled, than the doctrine, that a policy taken out by one person upon the life of another, in which he has no insurable interest, is illegal and void, as repugnant to public policy.—3 Kent's Com. (11th Ed.) 462-63. Such contracts are aptly termed " wager policies," and are entitled to no higher dignity, in the eye of the law, than gambling speculations, or idle bets as to the probable duration of human life. There is no limit to the insurable interest which a man may have in his own life ; but there are forcible reasons why a mere stranger should not be permitted to speculate upon the life of one whose continued existence would bring to him no expectation of possible benefit or advantage. All wagers, at common law, were not illegal, but only such as were contrary to good morals or sound policy.—Chitty. Contr. 468. The statutes of this State makes all contracts by way of gaming or wagering void.—Code, 1876, § 2131 ; *Hawley v. Bibb*, 69 Ala. 52. However this may be, wager policies, or such as are procured by a person who has no interest in the subject of insurance, are undoubtedly most pernicious in their tendencies, because in the nature of premiums upon the clandestine taking of human life. As observed in *Ruse v. The Mutual Benefit Ins. Co.*, 23 N. Y. 516, "such policies, if valid, not only afford facilities for a demoralizing system of gaming, but furnish strong temptations to the party interested to bring about, if possible, the event

[Helmetag's Adm'r v. Miller.]

insured against." It has been said by another court, in a comparatively recent case, that of "all wagering contracts, those concerning the lives of human beings should receive the strongest, the most emphatic, and the most persistent condemnation."—*Missouri Valley Life Ins. Co. v. Sturges*, 26 Amer. Rep. 761; s. c., 18 Kans. 93.

What will constitute an insurable interest in the life of another, such as will rescue such contracts from the imputation of being regarded as wager policies, it is not easy to define by a general rule  It has been held, in some cases, that the interest must be, in some sense, a pecuniary one, not predicated merely upon the fact of existing relationship.—*Guardian Mut. Life Ins. Co. v. Hogan*, 80 Ill. 35; s. c., 22 Amer. Rep. 180; *Missouri Val. Life Ins. Co. v. Sturges*, supra. In other cases, a contrary view has been intimated, which does not, however, seem to be sustained by the weight of authority.— *Warnock v. Davis*, 104 U. S. 775; *Continental Life Ins. Co. v. Volger*, 89 Ind. 572; s. c., 46 Amer. Rep. 185; May on Ins. § 107; *Lord v. Dall*, 12 Mass. 115; s. c., 7 Amer. Dec. 38, and NOTE, p. 42.

This contrariety of view, however, is of no importance here, as it is not denied that the appellee, Miller, had an insurable interest in the life of Helmetag, the decedent, to the extent of the value which he paid for the policy claimed to have been purchased by him. The bill recognizes this interest, and offers to refund to him this amount, estimated at about seven hundred and fifty dollars, with lawful interest. The point of contention is, that, admitting the assignment of the policy to Miller to be an absolute purchase, and not a collateral security, it was nevertheless void in his hands for *the excess* over and above the amount which he paid for it. It is urged, in reply, that a policy taken out by a party on his own life, and thus valid in its inception, can not become a wager policy by the mere fact of its assignment. It is true that there are cases which sustain this view, but they do not, in our opinion, either accord with sound reason, or harmonize with the weight of authority. The reason of the law which vitiates wager policies, is the pecuniary interest which the holder has in procuring the death of the subject of insurance, thus opening a wide door by which a constant temptation is created to commit for profit the most atrocious of crimes. This reason applies, with exactly the same force, to holding a policy by purchase, or assignment, as to holding one originally by direct issue from the insurance company. Otherwise the law would permit that to be done by indirection, which it prohibits from being done directly, and the end sought to be accomplished could practically be evaded with both facility and impunity. The evil of wager policies would rather be aggra-

[Helmetag's Adm'r v. Miller.]

vated than otherwise by such a rule, because speculators, desiring to indulge this species of gambling in human life, could more easily purchase from embarrassed policy-holders than procure the issue of such policies directly to themselves upon the lives of strangers. " In either case," as observed by a recent author in treating of this subject, " the holder of such policy is inter· ested in the death, rather than the life of the insured."—May on Insurance, § 398. This view is fully supported by the authorities, which, being directly in point, we cite without any attempt to discuss them.—*Missouri Valley Life Ins. Co. v. Sturges,* 18 Kans. 93 ; s. c., 26 Amer. Rep. 761; *Franklin Fire Ins. Co. v. Hazzard,* 41 Ind. 116 ; s. c., 13 Amer. Rep. 313; *Stevens v. Warren,* 101 Mass 564; *Warnock v. Davis,* 104 U. S. 775 ; May on Insur. § 398.

A policy which is purchased for any specific sum can be considered a wager policy, under these principles, only for the excess of the amount realized on it by the purchaser over and above the purchase-money, with interest. To this extent, the holder has an insurable interest, and thus far a court of equity will protect him. So far as concerns the surplus, the policy is just as much a contract of wager as if it covered only this particular excess. In *Warnock v. Davis,* 104 U. S. 775, this principle was decided ; Mr. Justice Field observing, that " to the extent in which the assignee stipulates for the proceeds of the policy beyond the sums advanced by him, he stands in the position of one holding a wager policy." The assignment, he said, was " only invalid as a transfer of the proceeds of the policy beyond what was required to refund those sums, with interest. To hold it valid for the whole proceeds, would be to sustain speculative risks in human life, and encourage the evils for which wager policies are condemned." The same rule had been previously announced in *Cammack v. Lewis,* 15 Wall. 643. It is also fully indorsed by the Supreme Court of Illinois in the case of *Guardian Mutual Life Ins. Co. v. Hogan,* 80 Ill. 35 ; s. c., 22 Amer. Rep. 180.

It is immaterial, in this aspect of the law, whether the policy of insurance on the life of Helmetag was assigned to Miller as collateral security for the amount admitted to be due, or whether it was assigned by absolute sale. The result is exactly the same in either case. Equity will regard it, in legal effect, as collateral security in the one case, as well as in the other. The facts stated in the bill entitled the complainant to relief under the general prayer ; and these facts are fully sustained by the proof.

The chancellor erred in dismissing the bill ; and his decree is reversed, and the cause remanded.