(80 South. 348)

## WEIL v. TRAVELERS' INS. CO.
### (3 Div. 182.)

(Court of Appeals of Alabama. Jan. 11, 1916. On Rehearing, April 2, 1918.)

**1. INSURANCE ☞114—LIFE INSURANCE—VALIDITY.**

The law is settled that a contract of life insurance, issued to one who has an insurable interest in the life insured, is a valid and enforceable contract.

**2. INSURANCE ☞438—LIFE INSURANCE—EXECUTION OF INSURED.**

Despite Const. 1901, § 19, providing no conviction shall work forfeiture of estate, insurer *held* not liable on life policy, containing incontestable clause, where insured was executed for murder.

**3. INSURANCE ☞139 — INSURANCE AGAINST EXECUTION FOR MURDER.**

A life policy in terms insuring against the contingency of insured committing murder and being convicted and executed therefor would be void.

**4. INSURANCE ☞392(1) — LIFE INSURANCE — NEW CONTRACT.**

An insurer which issued a life policy was not liable thereon, where insured was executed for murder, though it consented to a transfer of the policy to plaintiff's predecessor, and thereafter accepted payment of premiums thereon, which did not create a new contract of insurance between the parties not to be affected by any act of insured.

**5. INSURANCE ☞400 — INCONTESTABILITY CLAUSE — DEATH BY EXECUTION FOR MURDER—"MATURES."**

The defense that insured came to his death by execution for murder is not cut off by a clause providing for incontestability if the policy "matures" after the expiration of two years, since such cause of death is not within the legal contemplation of the policy, and, until death of insured occurs from a cause within the legal contemplation of the policy, the policy does not mature.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Matured; Maturity.]

**6. PLEADING ☞34(4) — DEMURRER — CONSTRUCTION.**

A pleading on demurrer must be construed most strongly against the pleader, and when so construed its averments must be precise, excluding all ambiguity of meaning and intendments.

**7. INSURANCE ☞641(2) — LIFE INSURANCE — ACTION ON POLICY—BURDEN TO PLEAD.**

Plaintiff suing on life policy issued on life of remote assignor, in pleading estoppel against defense that insured was executed for murder, had burden to aver she was either beneficiary named or had insurable interest in insured's life, a burden not met by averment policy from time of issuance was property of plaintiff's husband and plaintiff, insured having assigned to husband, and plaintiff claiming through him.

**8. INSURANCE ☞119—LIFE INSURANCE—ABSENCE OF INSURABLE INTEREST.**

In the absence of a showing that the beneficiary had an insurable interest in insured's life, transaction evidenced by a life insurance policy will be condemned as a wager and against public policy.

**9. INSURANCE ☞371 — LIFE INSURANCE — WAGER—BASIS OF ESTOPPEL.**

When the transaction relied on by plaintiff, suing on a life policy, as an estoppel of the insurer to set up a defense, is itself condemnable as a wager, it will not be recognized by the courts as a basis of estoppel.

Appeal from Circuit Court, Montgomery County; W. W. Pearson, Judge.

Action by Pauline Weil against the Travelers' Insurance Company. Judgment for defendant. and plaintiff appeals. Originally affirmed by the Court of Appeals, but reversed and remanded in obedience to the ruling of the Supreme Court in 201 Ala. 409, 78 South. 528.

The action was based on the policy of life insurance issued by appellee on January 21, 1898, on the life of Charles W. Jones, whereby it agreed to pay to. the executors, administrators, or assigns of said Jones $1,000 on proof of his death. The policy contained the following clause:

"It is hereby further agreed that after two years from the date hereof, the only conditions which shall be binding upon the holder of this policy are that he shall pay the premiums at the time and place, and in the manner stipulated in said policy. In all other respects, if this policy matures after the expiration of two years, the payment of the same shall not be disputed."

Jones, after having been duly tried and convicted for murder, some years subsequent to the issuance of the policy, was executed on the 4th of April, 1913. The complaint was in Code form, and to this complaint the defendant pleaded that insured had been tried and legally convicted and executed under said conviction. Demurrer was overruled to this plea, and plaintiff filed the following replication:

(2) The policy sued on contains the following provision: (Here follows the provision of the above policy as set out in the above quotation.) And plaintiff says that the premiums on said policy were paid as provided in said policy up to the time of the death of the insured.

(3) That said policy sued on was originally made payable to the executors, administrators, or assigns of the said Charles W. Jones, the insured. That subsequently, to wit, on April 14, 1898, the said Charles W. Jones for value transferred or assigned in writing said policy to Abraham Weil, of Montgomery, Ala., his executors, administrators, or assigns, a copy of which assignment was furnished to defendant in this case, as provided by the terms of the policy sued on. That subsequently, to wit, dur-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

16 ALA.APP.—41

ing the year 1908, said Abraham Weil was adjudicated a bankrupt by an order of the District Court of the United States for the Northern Division of the Middle District of Alabama. That subsequently George Stuart, as trustee in bankrupt of the estate of said Abraham, transferred and sold the assets of said Abraham Weil, including the said policy, to the New Farley National Bank of Montgomery, Ala., and subsequently, to wit, during the said year 1908, said New Farley National Bank sold and transferred all of the assets of the said Abraham Weil, including the said policy of insurance, to plaintiff in this case. That from the time of the transfer of the said policy by said Charles W. Jones to said Abraham Weil, up to and including the time of the death of said Charles W. Jones, all premiums accruing under the provisions of said policy were paid by said Abraham Weil and plaintiff in this case to defendant in this case, or its agents, and said premiums were accepted by defendant, through its agents, knowing that the same were paid by said Abraham Weil and plaintiff and receipts given therefor. And plaintiff says that said policy contained no provision or condition forfeiting or making the same void in the event said Charles W. Jones was legally executed.

(4) At the time of the alleged legal execution of said Charles W. Jones, as averred in said plea, plaintiff was the owner of said policy sued on, and the beneficiary thereunder, and had a vested interest in said policy, and plaintiff says that said policy contained no provision or condition forfeiting or making the same void in the event said Charles W. Jones was legally executed.

(5) That said policy sued on was transferred by the insured therein to Abraham Weil during, to wit, the year 1898. That said transfer was in writing, and a copy thereof furnished to defendant in this case, as provided by the terms of the policy sued on. That subsequently, during the year 1908, said Abraham Weil was adjudicated a bankrupt by an order of the District Court of the United States for the Northern Division of the Middle District of Alabama. That the assets of the said Abraham Weil were sold and transferred by George Stuart, as trustee of the estate in bankruptcy of said Abraham Weil, to the New Farley National Bank of Montgomery, Ala., included in which was the policy sued on. That subsequently the said New Farley National Bank transferred said assets, including said policy, to plaintiff in this case. That at the time of the death of the insured, as alleged in the complaint, plaintiff was the owner of said policy, and had a vested interest therein, and all premiums accruing on said policy from the time of the first premium until the death of the insured were paid by the said Abraham Weil and plaintiff, by and with the knowledge and consent of the authorized local agents of defendant. And plaintiff says that the said policy sued on contains no condition or provision exempting defendant from liability thereunder in the event the insured was legally executed.

(6) That said defendant, acting through its authorized agents, after said Charles W. Jones was convicted and sentenced to death by an order of the city court of Montgomery, and pending a stay of the execution of said sentence by reason of an appeal from said final judgment to the Supreme Court of Alabama, received from this plaintiff the annual premium on said policy of insurance becoming due and payable on, to wit, January 31, 1913, and plaintiff further says that defendant had previously received from her and said Abraham Weil, the husband of plaintiff, through whom plaintiff acquired said policy, all of the premiums on said policy which had previously accrued from the time of the issuance of said policy.

The demurrers to these replications being overruled, plaintiff takes nonsuit.

Steiner, Crum & Weil, of Montgomery, for appellant.

Rushton, Williams & Crenshaw, of Montgomery, for appellee.

BROWN, J. [1] The law is settled that a contract of life insurance issued to one who has an insurable interest in the life insured is a valid and enforceable contract. Helmetag's Adm'r v. Miller, 76 Ala. 183, 52 Am. Rep. 316; Alabama Gold Life Ins. Co. v. Mobile Mutual Ins. Co., 81 Ala. 329, 1 South. 561; Troy v. London, 145 Ala. 280, 39 South. 713. As observed by Mr. Justice Holmes of the United States Supreme Court:

"Life insurance has become in our day one of the best recognized forms of investment and self-compelled saving." Grigsby v. Russell, 222 U. S. 149, 32 Sup. Ct. 58, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642.

Assuming, therefore, for the sake of argument, that the beneficiary named in the policy had an insurable interest in the life of the insured, the contract was not void as contravening public policy, but valid, and, after its maturity, enforceable. The legal effect of the defense asserted by the defendant's plea, to wit, the conviction and legal execution of the insured for murder, is not that the policy is void, but that it has not matured. Otherwise stated, "death at the hands of the law" is not a contingency within the contemplation of the parties that operated to mature the contract so as to authorize an action thereon.

[2] While the policy does not in terms exclude this cause of death as a risk assumed, the law on grounds of public policy, according to the contracting parties innocent and legitimate intentions, excepts this risk and excludes this contingency, as one not within the contract operating to mature it. Amicable Society v. Boland, 4 Bligh, N. R. 194; Supreme Commandery, etc., v. Ainsworth, 71 Ala. 436, 46 Am. Rep. 322; Ritter v. Union Central Life Ins. Co., 169 U. S. 139, 18 Sup. Ct. 300, 42 L. Ed. 693; Burt v. Union Central Life Ins. Co., 187 U. S. 362, 23 Sup. Ct. 139, 47 L. Ed. 216; Id., 105 Fed. 419, 44 C. C. A. 548; Mutual Life Ins. Co. v. McCue, 223 U. S. 234, 32 Sup. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57; Collins v. Metropolitan Life Ins. Co., 27 Pa. Super. Ct.

353; Sophia Davis v. Supreme Council, Royal Arcanum, 195 Mass. 402, 81 N. E. 294, 10 L. R. A. (N. S.) 722, 11 Ann. Cas. 777.

[3] If the policy in terms insured the life against the contingency of the insured committing murder and being convicted and executed therefor, the contract would be void:

"Death, the risk of life insurance, the event upon which the insurance money is payable, is certain of occurrence; the uncertainty of the time of its occurrence is the material element and consideration of the contract. It cannot be in the contemplation of the parties that the assured, by his own criminal act, shall deprive the contract of its material element; shall vary and enlarge the risk and hasten the day of payment of the insurance money." Supreme Commandery, etc., v. Ainsworth, supra; Ritter v. Union Central Life Ins. Co., supra; Burt v. Union Central Life Ins. Co., supra; Hatch v. Mutual Life Ins. Co., 120 Mass. 550, 21 Am. Rep. 541.

The appellant insists that the doctrine announced in the Ainsworth Case, supra, cannot be applied to this case, because suicide by the insured is the voluntary and intentional taking of his own life, while the execution of the insured for crime is involuntary. The principle on which the defense is allowed is the same in both cases; the act committed by the insured resulting in his death, whether suicide or murder, is felo de se (McMahan v. State, 168 Ala. 70, 53 South. 89), and to allow either as a risk within the contract—the contingency operating to mature it—would have a tendency to remove one of the restraints operating on the mind against the commission of crime, to wit, the interest of the insured in the welfare of those dependent upon him (Amicable Society v. Boland, supra; Collins v. Metropolitan Life Ins. Co., supra; Mutual Life Ins. Co. v. McCue, supra).

If the law allowed a man by insuring his life to provide for the welfare of his loved ones and those dependent upon him, under certain conditions he might be willing to wreak vengeance upon his enemy and take his chance of escaping the penalty of the law; and likewise, if he could so provide for those dependent upon him, he might, under some circumstances, take his own life to avoid the burden of living. Life is not man's to destroy at will, and to do so except in defense of one's own life or person is a violation of law, both human and divine, and public policy forbids that the natural restraints against such crimes be made the subject of contract. Helmetag's Adm'r v. Miller, supra; Collins v. Metropolitan Life Ins. Co., supra.

It is strenuously insisted that the constitutional provision, "That no person shall be attainted of treason by the Legislature; and no conviction shall work corruption of blood or forfeiture of estate" (Const. 1901, § 19)—cuts off the defense that the insured was executed for crime, in that it saves to his estate all classes of property, and life insurance, being a recognized species of property, is within its protection. The statement of appellant's counsel in original brief, paragraph II, p. 8, is a complete answer to this contention:

"The contract sued on is not one payable to the insured or his estate; neither is it payable to his heirs; nor was it even held by the insured or any one claiming directly through him."

And we might add, nor does it affirmatively appear from the record that the insured or his estate ever had any interest in or claim to the policy. The manifest purpose of this provision of the Constitution was to inhibit legislative convictions for crime by bills of attainder, and to prohibit the forfeiture to the government of the estate of persons convicted as a punishment for crime. 9 Cyc. 871 (II, A, 3); 4 Cyc. 887.; Cummings v. Mo., 4 Wall. 323, 18 L. Ed. 356; Drehman v. Stifle, 8 Wall. 601, 19 L. Ed. 508; Fletcher v. Peck, 6 Cranch, 138, 3 L. Ed. 162; Cooper v. Telfair, 4 Dall. 18, 1 L. Ed. 721; Mayfield's Constitution, p. 16. The question here is: Is death at the hands of the law a contingency within the contract of insurance that gives the holder thereof the right to demand payment? This question we have answered. We do not doubt that it is within the competency of the Legislature to enact a statute that will cut off the right of an insurer to make this defense—may provide that contracts of insurance against such contingencies are valid and enforceable contracts. Whitfield v. Life Ins. Co., 205 U. S. 489, 27 Sup. Ct. 578, 51 L. Ed. 895.

[4] Appellant also insists that, when the insurer consented to the transfer of the policy and thereafter accepted payment of the premiums thereon, a new contract was created between the parties which cannot be affected by any act of the insured. This question is fully answered in McCue's Case, in these words:

"It is contended that, if the McCue estate cannot recover, the innocent parties, his children, will be admitted as claimants. To this contention, we repeat what we have said above, the policy is the measure of the rights of everybody under it, and, as it does not cover death by the law, there cannot be recovery, either by McCue's estate or by his children." Mutual Life Ins. Co. v. McCue, supra.

The Massachusetts court holds:

"It is true, as is said in some of these cases, that the insured cannot deprive a beneficiary of his rights by his subsequent misconduct. But it is equally true that, if the original contract impliedly excepts from its provisions cases of death by suicide, and if that is its true construction when considered in reference to the beneficiary as well as in reference to the insured, there is no more liability to the beneficiary for such a death than there would be to the

executor or administrator of the insured." Davis v. Supreme Council, Royal Arcanum, supra.

The breach of the contract by failure to pay after maturity by proof of death in a manner within the contract is the sole foundation of liability, and, unless liability can be thus shown, the plaintiff cannot recover. Pollak v. Winter, 166 Ala. 255, 51 South. 998, 52 South. 829, 53 South. 339, 139 Am. St. Rep. 33; s. c., 173 Ala. 550, 55 South. 828.

[5] The "incontestable clause," by its very terms, is dependent upon the maturity of the policy in a manner within the contemplation of the parties at the time the contract was entered into. It provides:

"If this policy matures after the expiration of the said two years, the payment of the sum insured shall not be disputed," provided, of course, the premiums have been paid at the time and place mentioned in the policy.

As we have shown, the policy has not matured, and, because of the legal execution of the insured, the contingency or event necessary to mature it can never happen; therefore, waiving the question of the competency of the parties by such clause to cut off the right of the insurer to make this defense, it is clear that the clause in question does not have this effect. To illustrate, suppose the insured were still living; the contingency operating to mature the policy, to wit, the death of the insured in a manner within the contemplation of the contract, could not be said to have occurred. Would this clause operate to cut off the right of the insurer to show that the insured was living, that the death of the insured, the event maturing the policy, had not occurred so as to authorize the plaintiff's action? It is too clear for argument that it would not. And it is equally logical to assert that, if the insured came to his death as a result of criminal conduct on his part not contemplated by the contract, this clause in the policy is no obstacle to showing this in defense of an action on the policy. What we hold is that the clause in this policy is so worded that it reserves to the insurer the right to show that the contingency fixing the maturity of the policy has not happened. This identical clause was involved in Ritter's Case, and the defense of suicide was allowed (169 U. S. 153, 18 Sup. Ct. 300, 42 L. Ed. 693). We do not hold that, by a clause differently worded, a policy may not be made incontestable after the lapse of a specified time. Many courts have so held. Sun Life Ins. Co. v. Taylor, 108 Ky. 408, 56 S. W. 668, 94 Am. St. Rep. 383; Clement v. New York Life Ins. Co., 101 Tenn. 22, 46 S. W. 561, 42 L. R. A. 247 and note, 70 Am. St. Rep. 650. These principles justify the ruling of the trial court in sustaining the defendant's plea against demurrer, and in holding that the several replications aside from the seventh were not sufficient to avoid this defense.

[6-8] When the sufficiency of the seventh replication is tested by the application of the familiar rule that a pleading on demurrer must be construed most strongly against the pleader and that, when thus construed, its averments must be precise, excluding all ambiguity of meaning and all intendments—in other words, that if, allowing the averments to be true, yet a case may be supposed consistent with it which would render the facts stated inoperative as an answer, it will be pronounced insufficient (Scharfenburg v. Town of New Decatur, 155 Ala. 654, 47 South. 95)—it is clear that the facts set up in the replication are not sufficient to operate as an estoppel against the defense pleaded. The defect lies in the absence of an averment showing that the plaintiff was the beneficiary named in the policy, or that she had an insurable interest in the life of the insured, a burden which the law places upon her. The averment in the replication is "that said policy from the time of its issuance was the property of plaintiff's husband and plaintiff." If the plaintiff had been named in the policy as beneficiary, it would be assumed, in the absence of a contrary showing, that she had an insurable interest in the life; but, when the claim is made otherwise than by the beneficiary named, it is essential that the claimant show an insurable interest. Troy v. London, 145 Ala. 280, 39 South. 713; Alabama Gold Life Ins. Co. v. Mobile Mutual Life Ins. Co., 81 Ala. 329, 1 South. 561; Stoelker v. Thornton, 88 Ala. 241, 6 South. 680, 6 L. R. A. 140. In the absence of such showing, the entire transaction will be condemned as a wager and against public policy. Helmetag's Adm'r v. Miller, 76 Ala. 183, 52 Am. Rep. 316; Culner, Trustee, v. Guyer, 129 Ala. 607, 29 South. 779.

[9] We are not prepared to say that if this replication had shown that the plaintiff had an insurable interest in the life of Jones, and that the alleged agent was acting within the scope of his authority, the conduct of such agent set up in the replication would not operate as an estoppel. Richards v. Shepherd, 159 Ala. 663, 49 South. 251; Auerbach v. Pritchett, 58 Ala. 451; Meyer v. Mitchell, 75 Ala. 480; Firestone v. Firestone, 49 Ala. 128; Cardwell v. Kelly, 95 Va. 570, 28 S. E. 953, 40 L. R. A. 240. As we have shown, assuming that the beneficiary named in the policy had an insurable interest in the life insured, the policy is not void on grounds of public policy; from its inception it was a valid contract, and is only avoided by the fact of the insured's coming to his death in a manner not covered, and which could not be covered by the contract, thus rendering the event necessary to mature the policy impossible of occurrence. Therefore it is not

unreasonable to argue that, after the insured was convicted and sentenced to death, the insurer, by conduct which induced the holder of the policy with an insurable interest in the life to part with value on the faith of the promise that in the event of execution the policy would be paid, is estopped from pleading that the policy has not matured. The crime is a past fact, and the accused has been convicted and sentenced to death, and there is nothing in the transaction on its face contravening public policy. However, this question is not now presented, and we do not commit ourselves to this view. But when the transaction relied on as an estoppel is itself condemnable as a wager, it will not be recognized by the courts as a basis of estoppel. 29 Am. & Eng. Ency. Law (2d Ed.) 1107; 40 Cyc. 255.

We find no error in the record, and the judgment of the circuit court is affirmed.

Affirmed.

### On Rehearing.

PER CURIAM. Reversed and remanded in obedience to the ruling of the Supreme Court (201 Ala. 409, 78 South. 528), on authority of Mutual Life Ins. Co. of N. Y. v. Lovejoy, 201 Ala. 337, 78 South. 299.