141 So. 350

## NATIONAL FIRE INS. CO. OF HARTFORD, CONN., v. KINNEY et al.

### 8 Div. 299.

Supreme Court of Alabama.

April 14, 1932.

Kirk & Rather, of Tuscumbia, and Smith, Hammond, Smith & Bloodworth, of Atlanta, Ga., for appellant.

A. H. Carmichael, of Tuscumbia, and Coleman, Spain, Stewart & Davies, of Birmingham, for appellees.

KNIGHT, J.

Suit by appellees on a policy of insurance issued by appellant to W. D. Richardson, a building contractor, who had prior thereto entered into a contract with Misses Agnes and Josephine Kinney to construct for them a residence on their lot in Sheffield, Ala.

Before the house was completed it was destroyed by fire, which occurred on the night of November 29th, or during the early morning hours of November 30, 1926. The policy insured Richardson for the term of thirty days from October 30 to November 30, 1926, at noon, against loss or damage by fire to the amount of $2,000. The policy is what is known and called a "builder's risk" policy, on a one-story frame building then in course of construction, and it recited that "when completed to be occupied for dwelling purposes only—provided the consent of the company is endorsed thereon."

The contract which Richardson had with the Misses Kinney, outlining the plans and specifications as to work to be done and material to be used in the construction, is in the following words: "I, D. W. Richardson, agree to furnish all material to build described home according to attached plans. This work complete in all respects will cost the sum of ($2,835.00) Two Thousand Eight Hundred Thirty-five dollars. Respectfully submitted, by D. W. Richardson. Accepted, Agnes Kinney, Josie Kinney, Date October 12, 1926."

During the progress of the work, the Misses Kinney paid or advanced the contractor all of the contract price, except $64.

The appellant insists that the amounts received from the appellees during the course of the construction were payments while the appellees insist they were advances made by them to the contractor to enable him to complete the job, and that they owed the contractor nothing until the house should be completed and ready for delivery, under the terms of their contract. To quote the appellant: "The proper interpretation of the contract is that it was merely an agreement by which Richardson was to get together the material necessary to build and that he himself using the material, would construct the house. The payments made by Misses Kinney from time to time went to reimburse Richardson for labor he had performed, and to furnish funds which, through him, would pay for the material. The real situation between the owner and the contractor was that the contractor was simply acting as agent for the owner in constructing a building which the owner from time to time would pay for, including the material as well as the labor." We do not think the contract, as for any language employed therein, will justify the construction appellant seeks to place upon it. We

think the contract will bear no other construction than that the parties to it contemplated a "lock and key" job, and that the Misses Kinney would owe the contractor nothing unless and until the house was completed according to the plans and specifications.

The complaint is in Code form for suit on a policy of fire insurance, with added averment showing a transfer and assignment of the policy to the plaintiffs. The point is made by the appellant that the complaint does not sufficiently show that the plaintiffs are the real or beneficial owners of the policy. This complaint avers: "That after the damage to said building as aforesaid, the said D. W. Richardson transferred and assigned and conveyed unto plaintiffs the said insurance policy, together with all his right and interest thereunder, and the right to maintain suit thereon, for the recovery of the amount due on said policy, and plaintiffs allege that they bring this suit as the owners of said policy and the rights thereunder by virtue of said assignment."

We know of no rule of pleading which requires that the transferee or assignee, in such a case, should be more specific in averring the transfer. The complaint meets all requirements of good pleading, under our statute, and is not subject to the demurrer assigned thereto. Code, § 9531, form 13; Union Ins. Soc. of Canton, Ltd. v. Sudduth et al., 212 Ala. 649, 103 So. 845; Am. Equitable Assurance Co. v. Powderly Coal & Lbr. Co., 221 Ala. 282, 128 So. 225; Commercial Fire Ins. Co. v. Capital City Ins. Co., 81 Ala. 320, 8 So. 222, 60 Am. Rep. 162. It follows, therefore, that the trial court committed no reversible error in overruling defendant's demurrer to the complaint.

With its demurrer overruled, the defendant filed among other pleas (which were in bar) a plea lettered A, and which, in our opinion, was and is a plea in abatement. Plea A set up a matter in abatement, but not in bar of the action. The plea was filed, the record discloses, on October 6, 1930. Immediately following this plea in the record, there appear twelve special pleas in bar. If these pleas were in fact filed after plea A, the filing of the pleas in bar thereafter would constitute a waiver on the part of defendant of the matters set up in plea A. If, however, the pleas in bar were first filed, defendant could not thereafter file plea A, which was, as above pointed out, a plea in abatement. Westchester Fire Ins. Co. of N. Y. v. Green, 223 Ala. 121, 134 So. 881; Home Ins. Co. v. Murphy, 223 Ala. 566, 137 So. 393; Liverpool & London & Globe Ins. Co., Ltd, v. McCree, 210 Ala. 559, 98 So. 880.

We hold that plea A, testing it by "its substantive allegations and its prayer," is a plea in abatement, and that plaintiffs under the circumstances might have moved to strike it, or have treated it as a nullity. Westchester Fire Ins. Co. of N. Y. v. Green, supra; Hart v. Turk, 15 Ala. 675; Brown v. Powell, 45 Ala. 149; Strouse v. Leipf, 101 Ala. 433, 14 So. 667, 23 L. R. A. 622, 46 Am. St. Rep. 122; Ex parte Dunlap, 209 Ala. 453, 96 So. 441; 1 Corpus Juris 268. However, plaintiffs did not pursue either of these courses, but filed replications thereto. The plaintiffs also filed a number of replications to each of defendant's pleas, separately and severally, and to plea A plaintiffs filed replications letters A, B, C, D, and E. To each of the replications the defendant demurred, assigning numerous grounds of demurrer.

After the contractor, Richardson, had made his contract with the appellees to construct the house, and while he was engaged in its construction, he had an insurable interest in the building. To protect this interest he sought and secured the policy of insurance sued on from the defendant. After the Misses Kinney had paid or made advances to the contractor, they also had a separate and distinct insurable interest in the building. The contract of insurance of the defendant was wholly with and for the protection of Richardson, the contractor, and it was paid for this indemnity. The Birmingham Fire Insurance Company was applied to by the appellees for a policy of insurance on the building, payable to them, and, while the policy was dated November 24, 1926, the plaintiffs' contention was that, by their agreement with the Birmingham Fire Insurance Company, their policy was not to become effective until the expiration of the builder's risk policy issued to Richardson.

The facts developed by the pleadings in the case, as well as by the testimony offered upon the trial, are strikingly similar to the facts in the case of Commercial Fire Ins. Co. v. Capital City Ins. Co., 81 Ala. 320, 8 So. 222, 224, 60 Am. Rep. 162. In that case, Holt, a builder and contractor, had entered into an agreement with a Mrs. Barrett for the building of a house for the latter. The contractor was obligated by his contract to furnish the materials and build the house for a certain sum of money, with payments to be made in installments as the work progressed. Holt secured from the Commercial Fire Insurance Company a builder's risk policy to protect him against fire. After Mrs. Barrett had made payments to Holt on the building, she took out a policy with the Capital City Insurance Company, insuring the house to her against fire in the amount of $2,000. While both policies were in force, a fire destroyed the house while it was still in the possession of the contractor, and before its completion. Holt transferred his policy to Mrs. Barrett, after the fire, and Mrs. Barrett thereupon transferred it to the Capital City Insurance Company. Thereafter the Capital City Insurance

Company, as transferee. sued the Commercial Fire Insurance Company on the policy issued by it to Holt. There was judgment for the plaintiff in the court below, and on appeal to this court from that judgment, Chief Justice Stone, in speaking for the court, said: "The real question in this case is whether Holt, at the time of the fire, had an insurable interest in the building. That depends on another inquiry,—was he bound under his contract to rebuild the house in the event of its destruction before completion and delivery, or, failing to do so, was he bound to refund to Mrs. Barrett the money she had paid him? In discussing this question, we may treat the Capital City Insurance Company and Mrs. Barrett as one, and the Commercial Fire Insurance Company and Holt as one. Or, we may ignore both policies of insurance, and treat the contention as a suit by Mrs. Barrett against Holt, to recover damages for not building and completing the house according to the plans and specifications. If she could recover in such suit, then Holt's liability to her constituted an insurable interest in him, and the present action is maintainable."

It will be noted that in the above case the court recognized that there was a contrariety of holding on the subject; some courts holding that where there was a contract, wherein the contractor agreed to build a ship and furnish the material, but to be paid in installments as the work progressed, the ship became the property of the employer pro tanto.

In disposing of the question after reviewing the authorities, Chief Justice Stone uses this language: "It will be seen by comparing the authorities cited above that the American rule differs from the English. We think those on this side of the Atlantic rest on a much sounder basis, and we will follow them. The house not having been finished nor delivered by Holt to Mrs. Barrett, its destruction was his loss. He, therefore, had an insurable interest."

Each of plaintiffs' replications to defendant's pleas in bar denied, in terms, the allegations of the several pleas, and, in legal effect,. averred that the policy sued on was issued to Richardson, who was at the time building a house for plaintiffs under a contract to complete the house as a finished job for a sum certain. The replications further. aver that, before the house was completed, it was destroyed by fire; and that plaintiffs loaned the said Richardson $1,907.-85 to enable him to rebuild and complete the said building according to contract, which he did; and that Richardson, as security for said loan, transferred and assigned the policy sued on to plaintiffs.

Replication 3 sets up that the plaintiffs had on the 24th day of October, 1926, contracted with the Birmingham Fire Insurance Company for the issuance of a policy on said house to take effect on completion of the house; that the Birmingham Fire Insurance Company made no settlement with plaintiffs for said loss, but loaned the plaintiffs $1,907 to enable plaintiffs to furnish money to Richardson in order that he might rebuild and finish the said house according to his contract with plaintiffs, which he did; that by way of security to the Birmingham Fire Insurance Company, for the money loaned to plaintiffs, they executed a mortgage upon the house that was being built and the lot on which it was situated, a copy of which mortgage is attached to said replication marked Exhibit A; and it is further alleged that, upon the lending of said money by the plaintiffs to Richardson, the said Richardson assigned and transferred to plaintiffs the policy of insurance, upon which this suit was brought, to secure plaintiffs for the money so loaned.

 Under the contract between the builder and the Misses Kinney, had the builder, after the house was destroyed by fire, failed or refused to rebuild the same according to his original undertaking, he would have been liable to suit and judgment by the Misses Kinney, in a proper action, to recover the amount of money paid or advanced him. This being true, Richardson was bound to rebuild the house, or pay back to the plaintiffs the money they had paid him, and in these circumstances his insurer was liable to him for his loss under its policy. Upon the destruction of the building, the liability of the insurer to Richardson became fixed, and he had the right to transfer and assign the policy to the Misses Kinney to secure the money with which to comply with his contract to them.

The demurrer raises the further point that the money obtained by the Misses Kinney from the Birmingham Fire Insurance Company was not in fact obtained by way of a loan from the company to the Misses Kinney, but was in settlement of their loss under its policy, and that, in paying the same over to Richardson, no loan was in fact made him, but it was payment to Richardson for rebuilding the house.

The appellant cites in support of their contention the cases of Lancaster Mills v. Merchants' Cotton-Press Co., 89 Tenn. 1, 14 S. W. 317, 24 Am. St. Rep. 586; Deming & Co. v. Cotton Press Co., 90 Tenn. 310, 17 S. W. 89, 13 L. R. A. 518; Roos v. Philadelphia, W. & B. R. Co., 199 Pa. 378, 49 A. 344.

 We,hold that there were two insurable interests; one held and owned by the contractor, Richardson, and the other by the Misses Kinney, and that the loan to the Misses Kinney, or the payment to her by the Birmingham Fire Insurance Company in no way

590

affected the liability of the defendant to the contractor under their policy, and which was transferred and assigned by the said Richardson to the plaintiffs. Commercial Fire Ins. Co. v. Capital City Ins. Co., 81 Ala. 323, 8 So. 222, 60 Am. Rep. 162; Planters' Ins. Co. v. Thurston, 93 Ala. 255, 9 So. 268; Am. Equitable Assurance Co. v. Powderly Coal & Lumber Co., 221 Ala. 280, 128 So. 225; Carter v. Fire Ins. Co., 12 Iowa, 287.

Our conclusion is that the replications to the defendant's plea in bar were not subject to the demurrers assigned thereto, and the court properly overruled the same.

 It is next insisted that plaintiffs' replication C to defendant's plea A was subject to the demurrer assigned thereto. This replication was in effect nothing more or less than a general replication denying the averments of said plea A. The demurrer was: "(18) Replication 'C' is no proper answer to plea 'A,' and the matters and things set up in said plea are immaterial and irrelevant." The demurrer, if the replication was subject to some substantial defect, does not point out the defect. The replication, being but a denial of the truth of plea A, was not subject to the grounds of demurrer assigned.

It is insisted that the court committed reversible error in overruling defendant's objection to the question propounded to the witness Charley Palmer, by plaintiff. The question was: "Now the policy was never delivered?" The objection assigned to the question was, "that the delivery of the policy does not affect its validity." Quite a different ground is discussed in brief of appellant. The witness had just previously testified that he was a clerk in the office of the agent Lagomarsino, and had signed the name of the latter to the policy, that he worked in Mr. Lagomarsino's office, and that Mr. Lagomarsino was the agent of the Birmingham Fire Insurance Company. The question as to when an insurance policy becomes effective, depends, not upon its manual delivery, but rather upon the intention of the parties to it.

The defendant had already introduced in evidence the mortgage and note executed by appellees to the Birmingham Fire Insurance Company, and it recited that the policy of insurance was not to become effective until the expiration of the policy written by defendant for Richardson. Having itself made this proof, it was competent for plaintiffs to show by the witness Palmer that the policy had not been actually delivered to plaintiffs, but that it remained in the office of the agent. As for any ground of objection assigned by defendant to the question asked the witness Palmer, the court properly allowed the witness to answer same.

Nor are we of the opinion that the court committed reversible error in refusing to permit defendant to introduce in evidence the paper, which purported to be the daily report (No. 630) of the Birmingham Fire Insurance Company, signed by Lagomarsino. Just what this report was in fact, the record does not disclose, and we cannot affirm error on the part of the court in declining to permit it to be introduced in evidence.

It is next insisted that the court committed reversible error in giving the affirmative charge for plaintiffs at their written request. Under the evidence in the case, and the rules of law as herein pronounced, the plaintiffs were due the general charge. Much is said over the failure of plaintiffs to offer evidence to show that "proof of loss" was made and given defendant. The defendant evidently overlooks the fact that it was incumbent upon it to show no proof of loss was made, not upon the plaintiffs. By its plea in abatement, defendant injected this issue into the case. The plaintiffs filed general replication to the plea. The burden of proof was thereby cast upon the defendant. It offered no evidence to support the plea.

The foregoing conclusions demonstrate that there was no error on the part of the court in overruling defendant's motion for a new trial.

Finding no error in the record prejudicial to appellant, the judgment of the circuit court of Colbert county will be here affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.