147 So. 173

## NATIONAL LIFE & ACCIDENT INS. CO. OF NASHVILLE, TENN., v. ALEXANDER.

### 7 Div. 180.

Supreme Court of Alabama.

March 16, 1933.

L. B. Rainey, of Gadsden, for appellant.

McCord & McCord, of Gadsden, for appellee.

THOMAS, Justice.

This is a suit upon a policy of insurance on the life of Henry Alexander and in which appellee was the beneficiary named therein.

The pleadings were in short by consent, etc.

The question of insurable interest was presented by the testimony for appellee that the assured was the "cousin of Hobart Alexander." Insurance contracts are void in the absence of an insurable interest—this being the result of public policy as to such matter to prevent such wagering contracts. American Equitable Assur. Co. v. Powderly Coal & Lumber Co. (Ala. Sup.) 142 So. 37; [1] National Fire Insurance Co. of Hartford, Conn., v. Kinney et al., 224 Ala. 586, 141 So. 350; Commercial Fire Insurance Co. v. Capital City Insurance Co., 81 Ala. 320, 8 So. 222, 60 Am. Rep. 162.

The insured was a yellow negro boy insured under the name of Henry Alexander, and his death occurred on August 4, 1930.

The beneficiary as a witness testified: " * * * It was something like two weeks after the agent came to see witness before witness got the policy; that on that day Henry Alexander was not dead; that nobody was present when the agent came by except witness; that witness told the agent that he wanted to insure his cousin and that the agent said he would; * * * that witness asked the agent if Henry Alexander would have to be examined and he said no; that he asked him if he would have to be examined by the doctor and the agent said no that it was not necessary, and they did not examine him that witness knows of. Witness further testified that he signed the paper that day and the agent said he would fill it out when he got back to the office; that witness did not know exactly what he did sign; that it looked just like a paper, something like an application blank; * * * that nobody was present when this conversation was had and when witness signed the paper; that the agent told witness to sign Henry's name to the paper and that of course he did what the agent said, that it was all right, and he said that it was not necessary for Henry to be here and to sign for himself; that witness paid the agent fifty cents that day, and that witness paid twenty-five cents weekly on this policy thereafter until Henry died; that he died on the 4th day of August, 1930, and that witness got the policy on the 3rd day of February, 1930; * * * that

Henry Alexander had this accident something like two or three years before this policy was written; that since the accident he had been shining shoes around and delivering sales papers in town; that after the agent of the company took this application blank that witness had signed Henry's name to that witness never saw that paper after that; that they never turned it over to witness; that they never showed him how it was filled out; that witness did not know what the agent of the company put in the paper or what was put in the paper after witness signed it; that in about two or three weeks after that witness received the policy and witness had paid the premiums on the policy at the time Henry Alexander died; that this agent to the company had never been present when Henry Alexander was present, and that this agent never collected premiums from witness when Henry Alexander was present."

The last clause of the policy of insurance which was offered in evidence reads: "Proofs of death under this policy shall be made upon blanks to be furnished by the Company and shall contain answers to each question propounded to the claimant, physicians and other persons, and shall contain the record, evidence and verdict of the coroner's inquest, if any be held."

The agent of the defendant who took the application testified that he took the same from plaintiff; that it was signed at the bottom in the handwriting of Hobart Alexander [appellee]; that he saw "Hobart sign this one here," referring to the application; that witness "never connected the yellow negro [Henry Alexander] with the application at all"; that there was a black negro there with Hobart [the plaintiff] when the "application was filled out"; that he was informed by Hobart "the day the application was taken out that Henry was his cousin."

The other witness for defendant, Ollie Yoe, testified that the assured named in the policy was "the little yellow fellow that died; that he was her sister's son," and "no kin to Henry Alexander."

The recent cases that illustrate our decisions on insurable interest of the beneficiary are: Ex parte Elizabeth Ingram (Ingram v. Johnson) (Ala. Sup.) 147 So. 172; [2] Afro-American Life Ins. Co. v. Adams, 195 Ala. 147, 70 So. 119; National Life & Accident Ins. Co. v. Bridgeforth, 220 Ala. 314, 124 So. 886; Bridgeforth v. Alabama Life & Accident Ins. Co., 221 Ala. 138, 139, 127 So. 840; North Carolina Mut. Life Ins. Co. v. Martin, 223 Ala. 104, 134 So. 850; and those illustrative of the insurable interest of an assignee in a life insurance policy are: Missouri State Life Ins. Co. v. Robertson Banking Co., 223 Ala. 13, 134 So. 25, and authorities; 73 A. L. R.

---

[1] 225 Ala. 208.

[2] Ante, p. 68.

1043, note of Alabama cases; Haase et al. v. First Nat. Bank of Anniston, 203 Ala. 624, 84 So. 761, wherein assignment was adjudged under the law of the state where made; Fourth Nat. Bank v. Woolfolk, 220 Ala. 344, 125 So. 217; Ex parte Elizabeth Ingram (Ingram v. Johnson), supra; 1 Cooley's Briefs on Insurance, p. 349 et seq., p. 362.

■■ In the matter of the issuance of insurance, as was the case here, the authorities above cited are to the effect (1) that a person has an unlimited insurable interest in his own life, and that such person may take out a policy of insurance on his own life payable to whom he desires; that \what is termed an "insurable interest" is not necessary to the validity of such an issue procured by the assured. Equitable Life Ins. Co. of Iowa v. Cummings et al. (C. C. A.) 4 F. (2d) 794; Scott v. Dickson, Adm'r, 108 Pa. 6, 56 Am. Rep. 192; 16 Alabama & Southern Digest "Insurance," ⬥116; (2) that it is further settled, as fundamental law, that one taking out a policy of insurance for his own benefit, on the life of another person, must have an (insurable) interest in the continuance of the life of such insured. 1 Cooley's Briefs on Insurance (1927), p. 333 (c); Connecticut Mutual Life Ins. Co. v. Schaefer, 94 U. S. 457, 24 L. Ed. 251; Crotty v. Union Mutual Life Insurance Co., 144 U. S. 621, 12 S. Ct. 749, 36 L. Ed. 566, and Swick v. Home Ins. Co., Fed. Cas. No. 13,692. 2 Dill. 160, are typical of federal decisions. Helmetag's Adm'r v. Miller, 76 Ala. 183, 52 Am. Rep. 316; Alabama Gold Life Ins. Co. v. Mobile Mutual Insurance Co., 81 Ala. 329, 1 So. 561; Weil v. Travelers' Ins. Co., 16 Ala. App. 641, 80 So. 348; Ex parte Weil, 201 Ala. 409, 78 So. 528; Mutual Life Ins. Co. of New York v. Lovejoy, 201 Ala. 337, 78 So. 299, L. R. A. 1918D, 860; Bridgeforth v. Alabama Life & Accident Ins. Co., supra; National Life & Accident Ins. Co. v. Bridgeforth, supra; 37 C. J. p. 385.

The general blood relations, recognized by the courts as constituting an insurable interest in human life and health, are discussed in 1 Cooley's Briefs on Insurance (2d Ed.) p. 370 et seq., viz.: (f) Husband and wife, page 377, 37 C. J. p. 394, § 59; (h) parent and child, page 380, 37 C. J. p. 393, § 55; (i) grandparent and grandchild, page 383, 37 C. J. p. 393, § 56; (j) brothers and sisters, page 383, 37 C. J. p. 393, § 57. The other relations of uncles and aunts, nieces and nephews, and that of cousins, have not been recognized by the courts as within the degree of blood of an insurable interest. 1 Cooley's Briefs on Insurance, p. 385. (k) Other relationships; 37 C. J. p. 394, § 58.

■ The last ground of the motion for a new trial was the lack of insurable interest. It is shown by plaintiff's testimony that the policy was procured by the beneficiary, and not by the assured; and that these parties were not within the rule of an insurable interest. And on this ground the new trial should have been granted.

The affirmative charge was not requested; nor were the contract provisions of proof of loss and the failure of proof thereof shown to have been urged upon the trial court by the defendant.

We reverse the judgment of the circuit court, and remand the cause.

Reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

