170 So. 84

## NATIONAL LIFE & ACCIDENT INS. CO. v. MIDDLEBROOKS.

### 1 Div. 222.

Court of Appeals of Alabama.

Oct. 6, 1936.

J. E. Meredith, of Mobile, and Alex C. Birch, of Montgomery, for appellant.

George Taylor and Harry T. Smith & Caffey, all of Mobile, for appellee.

RICE, Judge.

This suit is on a policy of life insurance.

The insured, Mrs. Lillian A. Walker, was the wife of the brother of plaintiff's (beneficiary's) wife. In such situation, appellee, plaintiff, beneficiary, of course had no insurable interest in the life of the insured.

The law that will govern our disposition of this appeal is thus stated by Mr. Justice Thomas in his opinion for the Supreme Court in the case of National Life & Accident Ins. Co. of Nashville, Tenn. v. Alexander, 226 Ala. 325, 327, 147 So. 173, 174, to wit:

"In the matter of the issuance of insurance, as was the case here, the authorities above cited are to the effect (1) that a person has an unlimited insurable interest in his own life, and that such person may take out a policy of insurance on his own life payable to whom he desires; that what is termed an 'insurable interest' is not necessary to the validity of such *an issue procured by the assured;* * * * (2) that it is further settled, as fundamental law, that one taking out a

policy of insurance for his own benefit, on the life of another person, *must have an (insurable) interest in the continuance of the life of such insured.* \* \* \*

"The general blood relations, recognized by the courts as constituting an insurable interest in human life and health, are discussed in 1 Cooley's Briefs on Insurance (2d Ed.) p. 370 et seq., viz: (f) Husband and Wife, page 377, 37 C.J. p. 394, § 59; (h) parent and child, page 380, 37 C.J. p. 393, § 55; (i) grandparent and grandchild, page 383, 37 C.J. p. 393, § 56; (j) brothers and sisters, page 383, 37 C.J. p. 393, § 57. The other relations of uncles and aunts, nieces and nephews, and that of cousins, have not been recognized by the courts as within the degree of blood of an insurable interest. 1 Cooley's Briefs on Insurance, p. 385. (k) Other relationships; 37 C.J. p. 394, § 58." (Italics ours.)

Because the application for the insurance was actually *signed* by the insured, appellee would invoke the rule as stated in subdivision (1) of the above-quoted excerpt from Mr. Justice Thomas' opinion in the Alexander Case cited.

But the question here is: Who "took out" the policy of insurance? If it was the *insured,* then there would seem to be no invalidity in the contract; on the other hand, if it was the *beneficiary* (plaintiff), the circumstances obtaining as set out in the second paragraph of this opinion would prevent a recovery in the suit.

We have not found it easy to answer the question we have stated above.

We quote the essential (as bearing on the said answer) portions of the testimony, to wit: Appellee, plaintiff, testified: "Lillian A. Walker, the insured, is my sister-in-law. My wife and her husband are brother and sister. \* \* \* The premiums on this policy were paid up regularly until the time of the death of Lillian A. Walker. I gave the agent a check every time it was due. \* \* \* I did not live in the same house with her but lived quite a way from her. Her husband was out of work and was on relief and so was she; she had a grown son on relief and there was not anybody in the family financially able to keep up the payments. That is the reason I negotiated insurance on her life. The policy was made payable to me. \* \* \* I had a policy on my boy with that company and Mr. Huggins came to collect, and every time he came he was always ding-donging

for me to give him some business, and Mrs. Walker had asked me to renew that policy on her husband and take one on her if I could afford it, so I intended to renew the policy on her husband with the Metropolitan and give him the other one on her to help him out and get rid of him. I made myself beneficiary, telling the agent to put me down as beneficiary. \* \* \* She was taken sick sometime in July or the latter part of June. I do not remember the exact date. She was washing dishes when she was taken sick and it was before the policy of insurance was issued, and I believe it was before the application was made for the policy. I believe that she continued to be sick of that illness until she died and that illness was treated by Dr. McCrary, I do not know whether he was her family physician or not. \* \* \* The policy was mine. \* \* \* At the first meeting with Mr. Huggins, he asked me if I had anything I could give him—he was soliciting business all the time—and I explained to him that he could take insurance on Mrs. Walker, if he wanted to. \* \* \* He said: 'Take this application and get her to sign it.' I said 'you will have to see her, won't you?' He said 'not necessary,' I took the application and let her sign it, brought it back and gave it to him, and he told me, 'there are two things to find out— find the place of her birth and date of her birth,' and I did and gave that to him and he filled out the balance of it. I returned it to him myself. It is not a fact that the agent got the insurance application from Mrs. Walker. I saw Mrs. Walker sign that; I have witnesses here to prove it; it was not filled out at all when she signed it; she just signed her name to it; Mr. Huggins filled it out. \* \* \* Mr. Huggins entered into negotiations with me in regard to the insurance; I did not do it. (Question by counsel): 'And you made no objection to his writing it out for you?' (Answer by witness): I did to get rid of him."

The witness Huggins, appellant's agent who solicited the insurance, and the same Huggins referred to in appellee's testimony, testified as follows: "I have known Mr. Middlebrooks practically two years. I talked with him in regard to the insuring the life of Mrs. Lillian Agnes Walker about July 12, 1934. Mr. Middlebrooks in applying for the insurance asked me could I write up a policy for Mrs. Walker and I told him I could. He said he wanted

to take out a policy for her, that is as well as I remember the case, and I told him, or rather he insisted that he have the application signed by Mrs. Walker, so I gave him an application and he had it signed. He gave me some of the information regarding the questions on the application, such as the name, date of birth, address and things like that. Later, I went down to the address named on the application to see Mrs. Walker and had the rest of the application filled out. He at the time the application was written paid me, I believe, three weeks premiums, on receipt of the application. * * * When I went to see Mrs. Walker, she met me at the door and at that time I asked her was that her signature on the application and she said it was, and I asked her questions pertaining to her health, and she agreed with some of the questions I had already had on the application * * , * She * * * admitted that was her signature. I sent in that application and had a policy of insurance issued on it. * * * I delivered the policy of insurance to Mr. Middlebrooks, who paid the premiums on it. * * * That first conversation between me and Mr. Middlebrooks was at his home on Old Shell Road. I was there to collect on other insurance, and was not there at a party or something like that. I had spoken to Mr. Middlebrooks about writing insurance on his family a number of times before that. Finally he told me he would take some insurance on the life of his sister-in-law."

We believe we have quoted hereinabove all the testimony that bore on the question we have set out to answer.

Perhaps we should here observe that it is the settled law of this state that the defendant (appellant, here) "may under the general issue impeach the validity of the contract sued on by proof of facts which show that the contract as a whole is void because contrary to public policy." Fidelity-Phenix Fire Ins. Co. of New York v. Murphy, 226 Ala. 226, 146 So. 387, 389. Or, as stated by Mr. Chief Justice Anderson for the Supreme Court in his opinion in the case of Shearin v. Pizitz, 208 Ala. 244, 94 So. 92, "It is the rule . * * * in Alabama and a few other jurisdictions to not enforce a contract in violation of the law and to deny the plaintiff the right to recover upon a transaction contrary to public policy, even if the invalidity of the contract or transaction be not special-

ly pleaded and is developed by the defendant's evidence."

We are clear to the conclusion, here, that the contract sued on was void, as being against the public policy of this state. National Life & Accident Ins. Co. of Nashville, Tenn. v. Alexander, supra. There seems no doubt, to our minds, that the policy of insurance was "taken out" by appellee for his own benefit. True, it appears that he "let insured" sign the application. But this is all she did, and such, manifestly, could not amount to a "taking out" of the policy. All the premiums were paid by appellee; he had himself named as beneficiary; the policy delivered to himself; kept by himself; and now seeks the benefits for himself. Really, we can see but small distinction, if any, under the circumstances here shown, between the method pursued by appellee in the instant case, where he "let" insured sign the application—blank application—and the method pursued by the plaintiff (beneficiary) in the Alexander Case quoted from near the beginning of this opinion, where the beneficiary signed assured's name to the application. In each case it is clear the policy was "taken out," as that term has been discussed, perhaps defined, by at least one court [See Wilson v. Crooks, Collector of Internal Revenue (C.C.A.) 52 F.(2d) 692], by the beneficiary.

For the error in refusing to give to the jury at appellant's request the general affirmative charge to find in its favor, the judgment is reversed and the cause remanded.

Reversed and remanded.