113 So.2d 189

S. W. KELLEY, Jr., d/b/a Alabama Home Supply Company,

v.

Mrs. C. E. OSBORN.

7 Div. 482.

Court of Appeals of Alabama.

May 27, 1958.

Rehearing Denied Feb. 17, 1959.

Further Rehearing Denied March 3, 1959.

**172**

Barnes & Carnes, Gadsden, for appellant.

Robt. H. King, Gadsden, for appellee.

CATES, Judge.

Upon a consideration of the application of the appellant for a rehearing, the former opinion is withdrawn and the following becomes the opinion of the court.

Kelley, at some time not specified in the record, "bought" a business in Gadsden known as "Alabama Home Supply." The terms and conditions of this transaction do not appear.

The former owners, Mr. and Mrs. Meador, had sold a television set to Mr. C. E. Osborn on a conditional sale. They had assigned the contract at its inception to General Electric Credit Corporation. Osborn later died, and on Mrs. Osborn's non-payment Kelley brought detinue for the set. The gist of Mrs. Osborn's defense was set forth in her Plea II:

"That C. E. Osborn, husband of your defendant, is now deceased but prior to his decease and at the time of the execution of the contract which was a lease sale contract and is the basis of this suit it was agreed at the time of the execution of said lease sale contract by and between the agent servant and employee while acting within the line and scope of his employment for Earl Meador and Myrtle Meador, from whom the plaintiff in this cause did purchase said Alabama Home Supply Company, that there would be insurance taken out on C. E. Osborn, Husband of Mrs. C. E. Osborn, to pay off the indebtedness owed on the property sued on in this cause in the event of the death of said C. E. Osborn, that said C. E. Osborn did die on to-wit: August 1955 and that at the death of said C. E. Osborn and within a month or two thereafter it was stipulated by Myrtle Meador, one of the co-owners of the former Alabama Home Supply Company, that there was insurance covering remaining balance due under said lease sale contract of which the property involved and sued on in this cause was basis of said lease sale contract and your defendant says that said lease sale contract is now paid in full."

Mrs. Osborn also pleaded the general issue.

Apparently, after default, General Electric Credit Corporation called on the Meadors by way of recourse. Mr. Meador, a witness for the plaintiff, on cross-examination, testified as follows:

"Q. They never reassigned this, on this instrument, back to you, did they,

Mr. Meador, the GE—General Electric Credit Corporation?

"The Court: Just a minute. I can't read this stuff here.

"Q. Did they ever reassign that contract back to you, or sell it back to you, according to the terms of the note itself? A. They gave it back to me when I gave them a check for the unpaid balance on the television.

"Q. They never reassigned it to you, though, did they? A. Yes, they did."

The record is silent on any testimony as to any assignment to plaintiff, Kelley.

At the close of the plaintiff's case, the defendant moved to exclude the plaintiff's evidence on the ground that there had been no showing of a written assignment to Kelley. This motion was overruled and Mrs. Osborn made no cross-assignment of error here. Accordingly, this ruling is not before us.

The plaintiff's assignments of error cover a number of points, of which only two get to the crux of the case.

■ *First*, we consider plea II set forth above. Kelley objected to this plea (and other pleas) by motion to strike and by 49 demurrers. Kelley contends the court below is in twofold error for overruling the motion and demurrers as to plea II. One of the grounds of the motion reads:

"6. Said instrument is unconstitutional in that it inflicts a cruel and unusual punishment on the Court and counsel for the Plaintiff in requiring them to read such a prolix, confused, ill drafted, repetitious, irrelevant, incoherent and impertinent instrument."

Plea II can be construed as a plea of payment, in that it alleges that the lease or conditional sale contract was agreed upon by the parties upon the understanding that

Kelley's predecessors in interest would take out credit life insurance which, in effect, would pay off the unpaid purchase price should Osborn die leaving any part thereof unpaid.

This plea is somewhat wordy. It is not reversible error to refuse to strike surplusage from an otherwise good pleading, Marx v. Miller, 134 Ala. 347, 32 So. 765.

We distinguish Laning v. C. R. Crim Building Co., 259 Ala. 268, 66 So.2d 121, wherein certain photographs were attached to a complaint and incorporated therein.

A plea of payment is not strait jacketed by Code 1940, Tit. 7, § 233, form 38, and hence need not aver payment by the debtor, Stull v. Daniel Mach. Co., 207 Ala. 544, 93 So. 583.

The plea of payment does not confine the evidence to proof of payment by defendant only.

■ *Second*, Kelley complains of plea II and of the admission of evidence throughout the trial with respect to the negotiations which led up to the sale of the television to the deceased, including evidence of representations that the salesman for Alabama Home Supply was told by the deceased, Mr. Osborn, that he, Osborn, would not buy the set unless there was life insurance to pay off the remainder at his death.

We find no error in the admission of such testimony.

Mrs. Osborn testified that Mrs. Meador, one of the partners then owning Alabama Home Supply, had informed her there was insurance to pay off the unpaid indebtedness as of her husband's death.

The written contract did provide, among other things, that it "constitutes the entire agreement between buyer and seller and no oral modifications hereof shall be valid." Such a statement, of course, carries weight, but the evidence and pleading of the mat-

ter of insurance was, in effect, that of an agreement outside of the contract containing no indispensable ingredient to the buying and selling of the television.

A comparison of Delta Loan & Finance Co. v. Craven, Miss., 95 So.2d 104 (noted Ala. L. R. X. 176), shows the Delta contract expressly called for credit life insurance. The policy which came in evidence showed the risk assumed was only that attending the buyer's death, and hence it was plain that work disablement was not covered. Kelley's bill of sale form (which had no note attached) was silent as to insurance. It did, on the payment schedule, show "no insurance charge," but in view of the freedom of arm's length bargaining underlying Commercial Credit Co. v. Tarwater, 215 Ala. 123, 110 So. 39, 48 A.L.R. 1437, we fail to see that the difference between a cash price and time price is anything other than the amount the seller, in his discretion, chooses to ask.

There was nothing to prevent the seller from covering himself against the risk of the buyer's death up to the remainder due, Helmetag's Adm'x v. Miller, 76 Ala. 183. Who pays the premium is not material here.

Code 1940, Tit. 7, § 374, does not apply to the alleged agreement as to life insurance. We believe the decision in Commercial Credit Company, Inc. v. Perkins, 236 Ala. 616, 184 So. 178, substantially determines the questions presented.

The controversy here is one as to whether or not there was substantial evidence to support the verdict, and even though this may be in diametric conflict with that presented by Kelley, we are not at liberty to review the question. We find no other errors assigned and argued which substantially affect rights of the appellant. Accordingly, the judgment of the court below is due to be

Affirmed.