**Clarence Hódge, Appellee, v. Globe Mutual Life Insurance Company, Appellant.**

**Gen. No. 37,148.**

32

Heard in the first division of this court for the first district at the October term, 1933. Opinion filed March 5, 1934. Rehearing denied March 19, 1934.

FULTON, FULTON & SHEEN, for appellant.

BROWN, BROWN & CYRUS, for appellee; SIDNEY P. BROWN, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff, the beneficiary named in an insurance policy issued by the defendant on the life of Herbert L. Hodges, brought suit against the Insurance Company to recover $1,000, the face of the policy. There was a trial before the court without a jury and a finding and judgment in plaintiff's favor for $1,000, and defendant appeals.

The record discloses that defendant Insurance Company had issued its policy insuring the life of Herbert L. Hodges for $1,000, in which his sister, Bessie A. Hodge, was named beneficiary; that afterward Bessie A. Hodge died and the policy was assigned or a new one issued in which plaintiff, her surviving husband, a brother-in-law of the insured, was named beneficiary.

Defendant filed an affidavit of merits in which it set up that the policy provided that it should not take effect if the insured was not in sound health when the policy was issued, or if it was made payable to a person having no insurable interest in the life of the insured; and it was alleged that when the policy was issued the beneficiary, his sister, had no insurable interest in the life of the insured, and therefore the policy was void.

A further defense pleaded was that in the application for the insurance the insured's age was given as 43, when as a matter of fact he was 55, and therefore if there was any liability, it did not exceed $672.50, which would be the amount due under the policy on the assumption that the insured was 55 years of age when the policy was issued.

On the trial of the case, counsel for defendant waived all defense except that Bessie A. Hodge, sister of the insured, named in the policy as originally issued, had no insurable interest in the life of her brother, and that when the policy was issued the insured was 55 years of age and not 43 as represented.

It is the law that one may insure his own life for the benefit of another having no insurable interest therein. *Hawley v. Aetna Life Ins. Co.,* 291 Ill. 28. This rule is not controverted by either party, but defendant contends that the policy was taken out by Bessie, sister of the insured, and that she had no insurable interest in the life of her brother, and therefore the policy is void. Sec. 9, ch. 73, Cahill's 1933 Statutes, p. 1657, provides that no insurance company shall issue a policy upon the life of a person in which the beneficiary named has no insurable interest. (This must be understood as meaning that one having no insurable interest in the life of another cannot procure a policy of insurance on such life. *Hawley v. Aetna Life Ins. Co., supra.*)

Plaintiff contends that the policy was taken out by the insured and not by his sister Bessie. The evidence shows that the application for the policy was signed by Bessie, and the questions and answers show that Bessie was making the application for her brother, and it was so understood by defendant Insurance Company; that the questions and answers are in reference to the insured and not to his sister. The application shows that insured was a rivet maker and his place of employment is given; that he was 43 years of age; that to one of the questions, "By whom will premiums be paid?" the answer written in was; "Sister," and that similar information was conveyed when the question as to who was to be the beneficiary was answered by "Sister," whose age was stated to be 41 years; that there was a blank line under which appeared "Signature of Applicant" and immediately following appeared in parenthesis, "Must be Life proposed or Beneficiary"; and it is said this indicates that a beneficiary was authorized to sign and fill out the application because the blank was prepared by the Insurance Company. Plaintiff further contends that the application blank shows that Bessie was making application for her brother because the blank called for the family history of the "applicant" and there were further questions to be answered if the applicant was a female, and those latter questions were not answered. And further, that part of the same blank was for the medical examiner's certificate, in which the medical examiner certifies that on the 17th of August, 1927, he made "in private, a personal examination of the above named Applicant."

We think the court might well find that Bessie filled out the application and was acting on behalf of her brother. It is obvious that there was no deception practiced and that the Insurance Company thoroughly understood all of the facts in the case; and the Insur-

ance Company ought not now be permitted to say that the policy was applied for by Bessie, the sister of the insured, that she had no insurable interest in the life of her brother, and that the policy was void for this reason. Moreover, we are further of the opinion that it may not be said, as a matter of law, that Bessie had no insurable interest in the life of her brother because the uncontradicted evidence is that the brother stayed at Bessie's home for months at a time, covering a period of a number of years. While it has been held by some courts that mere relationship without definite pecuniary interest is not sufficient to constitute an insurable interest, yet the weight of authority ''is in favor of a more liberal rule which recognizes relationship alone as sufficient if it is close enough to indicate that the policy has been obtained in good faith and not for the purpose of speculation upon a hazard in which the insured has no interest.'' 25 Cyc. p. 703.

We hold that it cannot be said that Bessie, the insured's sister, did not have an insurable interest in the life of her brother under the facts in the record, and the fact that she and her husband, the plaintiff, paid the premiums does not alter this conclusion.

Defendant further contends the evidence shows that at the time the policy was issued plaintiff was 55 years of age and not 43 as stated in the application and in the policy, and therefore the amount of the liability under the policy was $672.50.

Plaintiff, called under section 33 of the Municipal Court Act by defendant, testified that he did not know the insured's exact age but that he always thought Bessie was five or six years older than the insured. The application and the policy both give insured's age as 43 and the application states that Bessie was 41 years of age. The witness further testified that Bessie died February 14, 1931, and defendant offered in evidence the records from the Bureau of Records of Vital

Statistics showing that Bessie was 54 years old at the time of her death. The witness further testified that the insured died November 8, 1932, and if the insured was five or six years younger than Bessie, he would be about 48 or 49 years old when Bessie died. The policy is dated August 15, 1927, and states on its face that the insured was 43 years of age. He died a little more than five years afterward, so he would be between 48 and 50 years old at the time of his death.

But defendant contends that as a matter of fact deceased was 60 years old when he died and therefore about 55 years when the policy was issued, and that this would have been shown by the copy of the death certificate, certified by the Registrar of Vital Statistics which was offered by defendant, but erroneously excluded by the court. In this certificate it is stated that the insured died November 7 or 8, 1932, and that he was 60 years old. The statute requires that death certificates be made out and filed. Sec. 7 of chap. 65a, p. 1533, Cahill's 1933 Statutes, ¶ 23, provides: "The certificate of death shall contain at least the items of the Standard Certificate of Death, approved and adopted by the United States Bureau of the Census. The personal particulars shall be authenticated by the signature and address of the informant, who shall be the nearest of kin or other competent person acquainted with the facts. The medical certificate shall be made and signed by the legally qualified physician, if any, last in attendance or by the coroner."

Section 9 of the Act provides: "That the undertaker or person acting as undertaker shall be responsible for obtaining and filing the certificate of death with the local or sub-registrar of the district in which the death occurred, . . . He shall obtain the personal and statistical particulars required from the nearest of kin, or person best qualified to supply them, over the signature and address of his informant."

By section 20 of the Act, it is provided that a certified copy made by the proper official of the record of any death shall be prima facie evidence in all courts of the facts therein stated.

The certificate offered in evidence by defendant, above mentioned, names the informant as "Hospital Record—I. Wachtel," who was the registrar. This certificate shows that the information as to the age of the insured at the time of his death was obtained by the registrar from the hospital record. We have been unable to find any provision of the statute—and none has been pointed out—that such offered information obtained from hospital records is admissible in the absence of any evidence that the records speak the truth. In these circumstances we think the certificate was properly excluded. *Wright v. Upson,* 303 Ill. 120. In that case, which involved a will contest, it was held that the record of the hospital where the testatrix was a patient during her last illness was not admissible, there being no proof of its correctness. The court there said (p. 144): "The admission of the entire record (of the hospital) by the court was erroneous for the further reason that the hospital record was the product of two or more registered nurses, each nurse making entries only at the time and for the time during which she nursed the testatrix. Only one nurse, Miss Erickson, was called to testify as to the correctness of the entries made by her. . . . There is no such proof of the entries made by the other nurse. . . . If the hospital record is admissible at all it is for the same reason that books of account are admissible and the same character of proof is required, and all persons who make entries therein are required to testify to their correctness before they are admitted in evidence."

In the instant case the certificate shows that the information as to the deceased's age was obtained

from the hospital. This was not a compliance with the statute and was therefore properly excluded.

Defendant further contends that the court should have set aside the judgment and awarded a new trial because within 30 days after entry of the judgment defendant moved the court to vacate the judgment, and the motion was supported by an affidavit of the widow of the insured, in which it was stated that the mother of the insured "told this affiant that Herbert was born on the 29th day of February, 1872"; that the affiant had seen entries in the family Bible giving the same date of the insured's birth but that affiant was unable after diligent search to find the Bible. The affiant further stated that she did not know of the suit in the instant case until about the 9th of June, 1933, when she was requested by plaintiff's sister to appear as a witness and testify that she did not know the age of the insured.

The motion of defendant, which was supported by the affidavit above mentioned, stated that counsel for defendant had "attempted to communicate with the said Theresa Hodges (the affiant) sending investigators to her home in an attempt to gain admission thereto for the purpose of discovering evidence, all of whom were refused admission."

We think the court did not err in denying the motion. Had the witness been produced and testified to the facts set up in her affidavit, it would be far from establishing the age of the insured. At most it would be merely cumulative. Moreover, we are clear that defendant failed to show due diligence. The Insurance Company knew where Theresa Hodges lived and stated that they attempted to communicate with her and sent investigators to her home but could not gain admission. This we think is entirely too indefinite. Just what the investigators did or when they called is not disclosed.

There is no showing that defendant tried to subpoena this witness.

The judgment of the municipal court of Chicago is affirmed.

*Affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.