IRENE M. RETTENMAIER, executrix of estate of Louis A. Rettenmaier, deceased, appellant, v. GERALD J. RETTENMAIER, appellee.

No. 50888.

(Reported in 124 N.W.2d 453)

NOVEMBER 12, 1963.

James Furey and Leighton A. Wederath, both of Carroll, and William A. Shuminsky, of Sioux City, for appellant.

Robert S. Bruner, of Carroll, for appellee.

THORNTON, J.—Plaintiff's decedent and his brother, the defendant, were both pharmacists. Defendant owned a drugstore in Carroll and in February 1951 purchased a drugstore in Denison. Plaintiff's decedent managed this store for his brother until he purchased the store from defendant on January 2, 1953, under a written contract for $27,000 payable in installments. Almost from the time defendant purchased the store in 1951 he had an understanding with his brother, plaintiff's decedent, that eventually he (the decedent) would participate in the earnings of the store or would buy an interest in the store. During the summer and fall of 1952 defendant became interested in obtaining life insurance. He discussed annuities and a retirement income contract with the insurance man. He found, however, he was uninsurable. His insurance men, being resourceful and having at least some knowledge of his intention to sell the Denison store to his brother, suggested that he could obtain the insurance by insuring his brother's life and naming himself, the defendant, as beneficiary. With the prompt consent of decedent this was accomplished and a $20,000 retirement-income-type insurance policy on the decedent's life was issued by Northwestern Mutual Life Insurance Company dated November 12, 1952. The annual premium was $1576. Defendant paid the premiums and was the beneficiary. The father of decedent and defendant was named as contingent beneficiary. After decedent's death, June 4, 1955, defendant elected first to have the proceeds left at interest payable to him on a monthly basis. Later, in March 1957 he elected to withdraw the principal sum due.

This action was started in March of 1957. Plaintiff had ob-

954

tained court authority in September 1955 to commence this action.

Plaintiff's action is in two counts, she claims there was an oral agreement between decedent and defendant for the application of the insurance proceeds, after deducting the premiums paid by defendant, to the unpaid purchase price for the sale of the drugstore, and that as a matter of law where a debtor-creditor relationship exists the creditor is required to apply insurance proceeds less premiums on the debt.

Plaintiff first urges the creditor-beneficiary under the circumstances of this case must apply the proceeds less premiums in reduction of the debt. The authorities are not uniform in this. At page 743 of 29A Am. Jur., Insurance, section 1664, it is said:

"The question as to the rights in respect of proceeds of a life insurance policy naming a creditor as beneficiary depends largely upon the intention of the parties to the insurance contract, the terms of that contract, and all the circumstances surrounding the particular case, such as who procures the policy and pays the premiums and the purpose in procuring it. In a considerable number of cases it has been held that under proper circumstances a creditor who has been named as beneficiary in a policy of insurance on a debtor's life may be entitled to the entire proceeds of the policy, even where they exceed the amount of the debt and expenses necessarily incurred by the creditor in keeping the insurance in force."

In addition to the authorities there cited see Chapman v. Scott, 234 S. C. 469, 109 S.E.2d 1; and Craft v. Miller, 72 S.W.2d 806 (Mo. App. 1934).

 From the foregoing authorities we think the question should be determined from the circumstances and the purpose for which the insurance policy, here a retirement-income policy with various options, was procured. If it were taken for the purpose of protecting the insured and his heirs and paying the indebtedness owed to the named beneficiary, plaintiff should prevail. If taken for the purpose of benefiting the named beneficiary, here the defendant, he should prevail. Of course if there

is an agreement, written or oral, for the disposition of the proceeds it would control.

To determine the question here plaintiff's two propositions must be considered together. The circumstances as a practical matter cannot be considered separate from the claimed oral agreement.

■ The first circumstance is, plaintiff's decedent and defendant are brothers. Defendant urges this alone creates an insurable interest. We agree with this contention. The better and more enlightened view is that the relationship of brothers constitutes an insurable interest. Aetna Life Insurance Co. v. France, 94 U. S. 561, 24 L. Ed. 287, 288, 289; Century Life Ins. Co. v. Custer, 178 Ark. 304, 10 S.W.2d 882, 883, 61 A. L. R. 914, 916, and citations; Annotation, 61 A. L. R. 917; Annotation, 45 A. L. R. 1181; 29 Am. Jur., Insurance, Section 482, page 807; and 44 C. J. S., Insurance, Section 204, pages 906, 907.

In Webb v. Imperial Life Ins. Co., 216 N. C. 10, 11, 12, 3 S.E.2d 428, 429, the court said:

"But we think the better reasoning supports the view that the close relationship by ties of blood between brothers is alone sufficient to constitute insurable interest even when the beneficiary takes out the policy and pays the premiums thereon."

In 3 Couch on Insurance 2d, section 24:135, pages 244, 245, it is said:

"Generally speaking, the doctrine of these cases is that the natural laws of kinship and blood and the ties of affection and friendship, which ordinarily exist between brothers and sisters, negative the idea that one would desire the removal of the other by reason of the existence of insurance, and that such policies are therefore not contrary to good morals or public policy."

■ The following circumstances, coupled with defendant's denial of the oral agreement, negative plaintiff's claim as to the circumstances and oral agreement. In the summer of 1952 defendant became interested in obtaining insurance. His interest was not to merely insure his life but from the testimony of the insurance agent and from the plans shown to defendant we think it is clear he wanted to purchase a policy with a re-

tirement-income feature. This had nothing to do with the indebtedness between the parties. Actually there is no evidence that even suggests a debt at that time. Upon finding defendant uninsurable, the agent consulted with a more experienced insurance man, and the idea of insuring plaintiff's decedent because of the pending sale of the drugstore came into being. However, other than plaintiff's claimed oral agreement there is nothing to show a change of purpose so far as defendant is concerned. There is no indication defendant or the insurance agents considered changing to a straight life policy or term policy. It is clear the agents were of the opinion the company would not write a policy where the only relationship was that of brothers. Here the attitude of the company is not entirely consistent. It did issue a policy that included provisions and options doing far more than protecting the indebtedness of plaintiff's decedent, the insured, to defendant, the beneficiary. The beneficiary paid the premiums. He was the owner of the policy. The beneficiary, not the insured, had the right to change the beneficiary. Their father was named as a contingent beneficiary. No provision was made relative to the indebtedness. The policy purchased cost four to five times as much as a term policy. The only written word of an intention on the part of defendant to protect the debt was contained in a letter from the insurance agent to the insurance company that defendant felt need of protection on the brother purchaser. The evidence is that defendant was unaware of this until after this action was started.

The plaintiff's decedent did agree to obtaining the policy. He took the necessary physical examination at his brother's request. Under defendant's testimony he did so as a result of a phone call. It should be remembered he, plaintiff's decedent, was a man in good health. His brother, the defendant, and he were on good terms. He intended to purchase the Denison drugstore from his brother. The terms as shown in the written contract, total price $27,000, a down payment of $1, the unpaid balance to draw interest at four percent, the principal to be paid in monthly installments to be based and made according to earnings, were not unfavorable to decedent. At the time the policy

was taken out, November 12, 1952, there is no question but that the sale of the store between the brothers was contemplated. It would be natural for the purchaser to readily agree to the insurance for the benefit of his brother, particularly when it would be at no cost to him. This is true at least as far as any writing was concerned.

Plaintiff testified she overheard a conversation between her husband, the decedent, and defendant that took place in the drugstore in Denison before her decedent took the physical examination for the insurance. She states:

"The conversation was such that Gerald had made application, or wanted to make application for this insurance policy, and Louis felt that he had—his interest in the store should be protected, and he felt that it was justified, that he would agree to have the policy taken out if it was to pay the debt of the store off to Gerald Rettenmaier, and Gerald agreed that that would be all right. He stated he had been rejected for insurance, and he felt this was the only grounds he could possibly get a policy on, and that he had an interest and he wanted to protect it. * * *

"The agreement of the payments were that Gerald Rettenmaier would pay the first premium or premiums until the store was well established, then they would be paid out of the store funds."

She also contended there was an oral agreement for the sale of the store.

Plaintiff's daughter testifies to the same or similar conversation between her father and uncle bearing on the insurance policy.

Both plaintiff and her daughter testified to conversations with the insurance agents. It is not urged these are inadmissible as to the defendant. But such conversations are denied by the agent. And are referable to a term insurance policy sold by the same agents to plaintiff's decedent a short time later.

Defendant denied the conversation described by plaintiff and her daughter. He also denies plaintiff's testimony that the policy was kept at the Denison store. The evidence shows de-

fendant forwarded the policy to the company after his brother's death to arrange the option he then selected.

We are inclined to agree with the trial court's finding on this fact issue. It had the opportunity to observe the witnesses. We think it is correct and is sustained by the fact that not one word of the policy or written contract of sale of January 2, 1953, refers in anyway to the use of the insurance proceeds to pay the debt due.

The decree of the trial court is—Affirmed.

All JUSTICES concur.