282 So.2d 271

**MUTUAL SAVINGS LIFE INSURANCE COMPANY, a corporation,**

v.

**Donald R. NOAH.**

**S.C. 105.**

Supreme Court of Alabama.

June 7, 1973.

Rehearing Denied Aug. 30, 1973.

J. Gusty Yearout, Birmingham, for appellant.

Thomas E. Maxwell, Birmingham, for appellee.

HEFLIN, Chief Justice.

This is a declaratory judgment action in equity in which the appellee-complainant, Donald R. Noah, alleges in his bill of complaint that he is the named beneficiary in three policies of insurance issued by the appellant-respondent, Mutual Savings Life Insurance Company; that the life of William L. Noah, the brother of the appellee-complainant, was insured under each of these policies; that the insured died by drowning in the City of Galveston, Texas, while the policies were in force; and that the appellant-respondent insurance company refused to pay the amounts due under any of said policies (except that a partial payment was made on one of them). The bill seeks a decree construing the policies and declaring the rights of the appellee-complainant and the obligations of the appellant-respondent insurer thereunder, and ultimately that the court declare that the insurer is obligated to pay the death benefits and the balance of the burial benefits prescribed under one of the policies, plus the accidental death benefits provided in all three.

Copies of the three policies were attached as Exhibits A, B and C, respectively, to the bill. Since the evidence showed that such policies were issued and were in accordance with and contained the terms set forth in said exhibits, these exhibits will be referred to as showing the terms and conditions of the policies and as describing the policies in question.

Exhibit A provides for a death benefit of $1,500 and double that sum in case of accidental death, amounting to $3,000. It is provided therein that William L. Noah, who the evidence shows met death by drowning in or near Galveston, Texas, on September 13, 1971, is named therein as the insured and the appellee-complainant is named as the primary beneficiary. The policy bears date of February 15, 1971, which under the evidence is to be taken as the date of issuance.

Exhibit B shows a policy with the same date of issuance and the same terms and beneficiary as that contained in Exhibit A, except that the ordinary death benefit is $1,000 and the accidental death benefit is in double that amount, $2,000. Each of the two policies is characterized as a "Twenty Pay Life Insurance Policy."

Exhibit C is entitled a "Burial Insurance Policy," and provides that the insurer will furnish described funeral services, including, among other things, a casket, if the death of the insured, William L. Noah, should occur within the State of Alabama and within 35 miles of an authorized fu-

neral director. There is the further provision that if the insured's death occurs outside the State of Alabama or more than 35 miles from an authorized funeral director, the company agreed to pay to the beneficiary (Donald) one-half of the retail value of the policy as a cash payment. Since the retail value of the policy is $600, the cash payment to the beneficiary for a death outside the State would be $300. However, there is a further provision that in a case of accidental death the company would pay an additional amount equal to one-third of the retail value, which in this case would be an additional sum of $200, meaning a total cash payment of $500. The date of issuance was February 15, 1971, the same date as the other two policies.

The evidence shows that the beneficiary, Donald R. Noah, by written instrument dated September 16, 1971, declared that he became indebted to Kilgore Funeral Home, Pell City, Alabama, for funeral services and supplies for the burial of William I. Noah in the amount of $434.66, and he thereby assigned unto said funeral firm that amount out of the proceeds of the said burial policy, authorizing Mutual Savings Life Insurance Company to make its check payable to said firm for the assigned amount and directing it to pay the remainder of the proceeds of the policy to the beneficiary, Donald R. Noah. If this burial policy is held to be effective, unquestionably the obligation of the insurer has been partially discharged up to the amount of $434.66, and the insurer owes the beneficiary the unpaid balance of the maximum benefit of $500 due thereunder, viz., $65.34 with interest thereon.

The respondent in its answer and the amendment thereto denies liability under the policies on the ground that the complainant and beneficiary obtained the policies of insurance on his brother's life and that he had no insurable interest which would entitle him to recover, and also on the ground that the policies had lapsed for non-payment of premium.

The trial court rendered a judgment in favor of the appellee-complainant and against the appellant-respondent on all three policies in the total amount of $5,065.34, consisting of $5,000 under the life policies (Exhibits A & B), and $65.34 under the burial policy (Exhibit C), with interest from October 6, 1971, specified as the date the appellant-respondent denies liability.

■ The most divisive issue with which this court is faced is presented by appellant-respondent's contention that Donald R. Noah has no insurable interest in the life of the insured, and that each of the three policies was invalid by reason thereof. It may be well to note at the outset that this court holds the burial policy not to be subject to the insurable interest requirement. The public policy grounds for requiring an insurable interest, which are discussed below, are not applicable to a burial policy wherein the benefits are substantially restricted to providing burial services. For this reason, it is the named insured in such a policy who is in reality the recipient of the insurance benefits, not the named beneficiary. Jordan's Mutual Aid Association v. Edwards, 232 Ala. 80, 166 So. 780. But, even if it could be said that the burial policy is subject to the insurable interest requirement, this court holds, for the reasons stated below, that Donald R. Noah did have an insurable interest in William's life.

■ Under the evidence the two life policies were procured or "taken out" (an expression used in our cases) by the beneficiary, and thus the long-established rule that the insurance is invalid unless the beneficiary has an "insurable interest" in the life of the insured applies. This rule is to the effect that a person has an unlimited insurable interest in his own life and may designate any person as his beneficiary so long as the insurance was procured or taken out by the insured and the premiums paid by him, but one taking out a policy of insurance for his own benefit, on the life

of another person, must have an insurable interest in the continuance of the life of such insured. National Life & Accident Ins. Co. v. Alexander, 226 Ala. 325, 147 So. 173; Tit. 28A, § 316, Code of Alabama, 1940 (Recomp. 1958).[1]

Several reasons have been assigned as the basis for the insurable interest requirement, both of which are grounded upon public policy considerations: a policy taken out by one for his own benefit on the life of another, in whom he has no insurable interest is, in substance, a wagering contract; and such a policy may hold out a temptation to the beneficiary to hasten by improper means the death of the insured. Commonwealth Life Insurance Co. v. George, 248 Ala. 649, 28 So.2d 910; Helmetag's Adm'x v. Miller, 76 Ala. 183.

Certain blood relationships have been held sufficient, in and of themselves to negate the supposition that the beneficiary would take out such a policy for the purpose of wagering on the insured's death, or that such a policy would entice the beneficiary to take the insured's life, and in such cases the relationship alone is said to create an insurable interest. This is true notwithstanding the fact that the beneficiary may have no reasonable expectation of pecuniary advantage through the continued life of the insured or consequent loss by reason of his death, which would otherwise be required in order to find an insurable interest.

■■ The relationship of husband and wife has been held to be sufficiently close to give either an insurable interest in the life of the other. Jennings v. Jennings, 250 Ala. 130, 33 So.2d 251. The parent-child relationship has been accorded the same status as that given to husband and wife in *Jennings*. Warnock v. Davis, 104 U.S. 775, 26 L.Ed. 924; 44 C.J.S. Insurance § 204.

■ On the other hand, the following relationships have been held not to create an insurable interest on the basis of such relationship alone. Cousin and cousin, National Life & Accident Ins. Co. v. Alexander, 226 Ala. 325, 147 So. 173; beneficiary has no interest in the life of the wife of his wife's brother, National Life & Accident Ins. Co. v. Middlebrooks, 27 Ala.App. 247, 170 So. 84; aunt and niece, Commonwealth Life Ins. Co. v. George, 248 Ala. 649, 28 So.2d 910; aunt-in-law and niece, Liberty National Life Ins. Co. v. Weldon, 267 Ala. 171, 100 So.2d 696; niece and uncle, Bell v. National Life & Accident Ins. Co., 41 Ala.App. 94, 123 So.2d 598.

■ The specific issue presented in the case under review is whether one has an insurable interest in the life of his brother by virtue of the relationship alone. While realizing that this issue is one of first impression in Alabama, and that other jurisdictions are in conflict on this matter, a review of the holdings of other states has convinced this court that the vast majority[2] and best reasoned holdings support the proposition that the brother-brother relationship will, in and of itself, support an insurable interest.

Before reviewing the holdings and rationale of other jurisdictions it may be well

---

1. Although the Insurance Code, i. e., Title 28A, became effective after all relevant times for purposes of the instant case, this court is of the opinion that the result obtained in the instant case would not be altered by the application of section 316, which provides as follows:

"§ 316. Insurable interest; personal insurance.—(1) Insurable interest with reference to personal insurance is an interest based upon a reasonable expectation of pecuniary advantage through the continued life,

health or bodily safety of another person and consequent loss by reason of his death or disability, or a substantial interest engendered by love and affection in the case of individuals closely related by blood or by law."

2. This court's research has disclosed that of the nineteen jurisdictions which have written to this issue, fourteen have stated that one has an insurable interest in the life of his brother by virtue of the relationship alone.

to comment upon the United States Supreme Court's holding in Aetna Life Ins. Co. v. France, 94 U.S. 561, 24 L.Ed. 287 (1876), wherein the beneficiary-sister, Lucetta P. France, although not dependent upon her brother, Andrew J. Chew, the insured, for her support, had loaned him some $6,000. The policy stated that the insured had paid the first premium, and several subsequent annual premiums were paid by him, with the beneficiary contributing to the payment of the last three premiums.

It has been suggested that although the United States Supreme Court upheld the policy, its decision would have been otherwise had the beneficiary herself procured the policy on the life of her brother, as she would have no insurable interest in his life in the absence of some showing of dependency or pecuniary interest. *France*, supra, can not be so interpreted for two reasons. First, the court in *France*, expressly waived the issue whether the beneficiary could have taken out the policy in her own name on the life of her brother merely as his sister. Second, if any inference is to be drawn as to what the court might have held had the beneficiary taken out the policy in her own name, it must be that such policy would be upheld, for the court stated:

> "[W]here the relationship between the parties, as in this case, is such as to constitute a good and valid consideration in law for any gift or grant, the transaction is entirely free from such [wagering contract] imputation."

Also, the *France* holding has been cited by many state courts which will be referred to later, as authority for the proposition that one has an insurable interest in the life of his brother solely by virtue of the relationship alone. It is also cited at 43 Am.Jur.2d p. 540 for this same proposition.

As to what blood relationships are sufficiently close to support an insurable interest, that of brothers is admittedly a borderline case. Equitable Life Assur. Soc. v. Hazlewood, 75 Tex. 338, 12 S.W. 621 (1889). The Court in *Hazlewood*, although stating that brothers and sisters were "on the dividing line", refused to hold there was no insurable interest by virtue of the relationship alone. Although the insured was indebted to the beneficiary, the amount of the debt represented less than one-tenth of the proceeds of the policy. Any doubt as to the position Texas had taken in the wake of *Hazlewood* was later resolved in Williams v. Fletcher, 26 Tex.Civ.App. 85, 62 S.W. 1082 (1901), wherein the Texas court held that a brother does have an insurable interest in the life of his brother by virtue of the relationship alone.

The reason most often assigned as the basis of a holding that such relationship will, in and of itself, support an insurable interest is that the natural love and affection prevailing between the two and the expectation that one will render the other aid in time of need is sufficient to overcome any wagering contract argument, as well as any impulse to hasten the death of the insured. This rationale was well stated in Century Life Ins. Co. v. Custer, 178 Ark. 304, 10 S.W.2d 882 (1928), as follows:

> "Brothers are so closely related that they are naturally interested in the preservation of the life of each other. Generally, they will lay down their life for each other. As a rule they care for each other in illness to the extent, if necessary, of furnishing all needed comforts and medicinal aid. It would be contrary to human nature for them to speculate on the death of each other, so it may well be that their contracts for insurance on the life of each other should not be classed as wagering contracts."

This view was adopted by Kentucky in Hahn v. Supreme Lodge of the Pathfinder, 136 Ky. 823, 125 S.W. 259 (1910), wherein the court stated that an insurable interest may arise from blood relationship alone without regard to whether the beneficiary has any pecuniary interest in the life of

the insured or is dependent upon him. If blood relationship alone constitutes an insurable interest, certainly, the court reasoned, the relationship of one brother to another, is sufficiently close for that purpose. The court concluded as follows:

> "[W]here the relationship . . . is so close as to preclude the probability that mercenary motives would induce the sacrifice of life to gain the insurance, the element of pecuniary consideration is not deemed essential to sustain the validity of the policy."

Pennsylvania's position on this issue was left in doubt by Bonistalli v. Bonistalli, 269 Pa. 8, 112 A. 7 (1920), wherein a joint policy was taken out by two brothers, who were partners in business, payable to the survivor. The court upheld the policy stating that "[t]he policy was properly issued to protect the firm, and, considering their blood relation and joint business affairs, Joseph [the beneficiary] had an insurable interest in the life of his brother." Thus, there was no clear holding as to whether, absent such business relationship, the court would have found an insurable interest. The case of Phillips' Estate, 238 Pa. 423, 86 A. 289 (1913), which was cited for the above proposition may indicate that *Bonistalli* is authority for the proposition that one has an insurable interest in the life of his brother by virtue of the relationship alone, for *Phillips' Estate*, held the relationship of brother-sister alone sufficient to support an insurable interest, reasoning that the natural affection prevailing between brother and sister and the expectation that in case of need they will render each other aid was sufficient.

Any doubt as to Pennsylvania's position was resolved in Montgomery's Estate, 299 Pa. 452, 149 A. 705 (1930), wherein it was held that the blood relationship of brother-sister, standing alone, will support an insurable interest.

In addition to the cases cited above a number of other jurisdictions have held the blood relationship alone sufficient. Hosmer v. Welch, 107 Mich. 470, 65 N.W. 280 (1895); Hess' Adm'r v. Segenfelter, 127 Ky. 348, 105 S.W. 476 (1907) (dicta); Goodwin v. Massachusetts Mut. Life Ins. Co., 73 N.Y. 480 (1878); Lawler v. Home Life Ins. Co. of America, 59 Pa.Super. 409 (1915); Rettenmaier v. Rettenmaier, 255 Iowa 952, 124 N.W.2d 453 (1963); Webb v. Imperial Life Ins. Co., 216 N.C. 10, 3 S. E.2d 428 (1939); Rogers v. Atlantic Life Ins. Co., 135 S.C. 89, 133 S.E. 215 (1926); Woods v. Woods' Adm'r, 130 Ky. 162, 113 S.W. 79 (1908) (dicta); Hodge v. Globe Mut. Life Ins. Co., 274 Ill.App. 31 (1934); Inter-Southern Life Ins. Co. v. Stephenson, 246 Ky. 694, 56 S.W.2d 332 (1933); Lane v. Lane, 99 Tenn. 639, 42 S.W. 1058 (1879); Rombach v. Piedmont & Arlington Life Ins. Co., 35 La.Ann. 233, 48 Am. Rep. 239 (1883) (dicta); Newmore v. Western & Southern Life Ins. Co., 8 Ohio Civ.Ct. R., N.S., 308 (1906) (dicta); Trenton Mut. Life and Fire Ins. Co. v. Johnson, 24 N.J. L. 576 (1854) (dicta); Crosswell v. Connecticut Indemnity Ass'n., 51 S.C. 103, 28 S.E. 200 (1879) (dicta).

Perhaps the facts of the instant case tend to contradict the closeness and mutual love and affection which the above holdings attribute to the brother-brother relationship, but this court does not write for this case alone. The holding of this court today will govern all future cases, not just the exceptional one where the natural love and affection common to the brother-brother relationship may be missing.

In view of the foregoing it is the conclusion of this court that the brother-brother relationship will, standing alone, support an insurable interest.

This court has reviewed the holdings of various other jurisdictions [3] which are con-

---

3. For cases holding that the relationship of brother-brother does not constitute an insurable interest, see Lord v. Dall, 12 Mass. 115, 7 Am.Dec. 38 (1815); Lewis v. Phoenix Mut. Life Ins. Co., 39 Conn. 100 (1872); Miller v. Travelers' Ins. Co., 81 Ind.App. 618,

tra to the decision announced by this court today, and finds that the rationale underlying these cases is that one would take out an insurance policy on the life of his brother for the purpose of gambling on the time of his death, or would, by virtue of such policy, be induced to take the life of his brother for a price, which is not, in the opinion of this court, substantiated by the common experience of mankind.

Having determined the insurable interest issue adversely to the appellant-respondent, this court now directs its attention to the question of "lapsation" presented by the insurer. The evidence disclosed that the last premium payment on the three policies in question prior to William's death was received by appellant on July 26, 1971. Clearly, by the strict language of the policy, they had lapsed and were out of benefit at the time of William's death on September 13, 1971, such date being well past the 28-day grace period. The question then is did the appellant-respondent in some way extend the period of coverage so as to render itself liable on these policies?

The Noahs had a total of eleven policies of insurance with the appellant (three on William and eight on members of the immediate family). Mrs. Noah normally wrote one check per month to pay the premiums on all eleven policies in a lump sum. On September 20, 1971, the appellant-respondent accepted a check from the Noahs for $67.26, which amount represented the August and September premiums on all eleven policies. It will be noted that on September 20, 1971, William had been dead for one week and such fact was known to the insurer. Appellant-respondent contends that even though it accepted the full $67.26 covering all eleven policies, no part of said sum was applied to the three policies in question, the necessary amount to reinstate the other eight policies being ap-

plied to them and the remainder being credited to the October payment for those eight policies. The insurer took the above actions without consulting the Noahs and made no offer to return the premium payment on William's policies to the Noah family.

■ In view of the circumstances presented, this court must conclude that the appellant-respondent, by retaining the September 20, 1971, payment on the three policies in question after having notice of his death, extended the period of coverage thereunder and caused itself to be liable thereon. In the case of Alabama Farm Bureau Mutual Casualty Insurance Company v. Hicks, 272 Ala. 574, 133 So.2d 221, this court held that retention by an insurer of a past due premium payment, with knowledge that a loss was sustained during the defaulting period, constituted a waiver of the condition that premiums paid late did not cover losses sustained during the period of default and rendered insurer liable for such loss. Though *Hicks* involved an automobile liability policy, the basic principles found therein are applicable to the instant case. This court stated in the *Hicks* decision that:

"When the insurance company ascertained that Hicks suffered an accident during the defaulting period for which he claimed coverage, it could have offered (1) to return the premium for the defaulting period, or (2) it could have applied the premium for the period from November 27, 1956 to May 27, 1957, or (3) it could retain the premium and cover the collision loss."

Obviously, choice number 2 above has no application to the present case since the loss suffered was death and there could be no reinstatement. However, this court is of the opinion that options 1 and 3 above

144 N.E. 554 (1924); Abernathy v. Springfield Mut. Ass'n, 284 S.W. 198 (Mo.App. 1926); Gulf Life Ins. Co. v. Davis, 52 Ga. App. 464, 183 S.E. 640 (1936); Dieterle v. Standard Life Ins. Co., 119 S.W.2d 440 (Mo.App.1938); Williams v. Northeast Mut. Ins. Ass'n., 72 S.W.2d 166 (Mo.App.1934); Masonic Ben. Ass'n of Central Illinois v. Bunch, 109 Mo. 560, 19 S.W. 25 (1892).

do apply and were available to the appellant-respondent. For reasons of its own the insurer selected option 3 and is bound thereby to pay to appellee-complainant, the amount due under the two life policies as well as the full amount provided under the burial policy ($500). Counsel for the insurer might argue that the September 20 premium on the three policies in question was not "retained" but in fact credited to the Noah family account. This may be true but it was not authorized to make such a determination on its own. Consequently, since the insurer failed to tender back to the Noahs that part of the $67.26 representing the payment on William's policies, appellant-respondent by its actions elected option 3 and rendered itself liable on all three policies. Accordingly, this court holds that the insurance company is obligated to pay Donald Noah, in addition to the amount due under the life insurance policies, the balance due on the burial policy being the sum of $65.34, with interest from September 16, 1971.

Affirmed.

MERRILL, MADDOX and FAULKNER, JJ., concur in the entire opinion.

HARWOOD and McCALL, JJ., concur in the opinion except the "lapsation" feature with which they dissent.

JONES, J., concurs in the opinion except on the "insurable interest" feature with which he dissents.

COLEMAN, J., dissents.

JONES, Justice (dissenting).

I must disagree with the majority holding that one has an insurable interest in the life of his brother (or sister) on the basis of their relationship alone. The public policy which provides the "insurable interest" requirement has its roots in two related, yet independent, principles. Absent insur-

able interest such contracts have been discredited for two reasons. One is that they are wagering contracts and the other is that they may be an inducement to homicide. It is not necessary that both reasons exist at the same time or to any given policy. While each might considerably influence the other, these two public policy principles are mutually exclusive and not interdependent.

The rule relating to the necessity of an existence of an insurable interest is well stated in Commonwealth Life Insurance Co. v. George, 248 Ala. 649, 28 So.2d 910:

"It is, of course, well established that one cannot take out a valid and enforcible policy of insurance for his own benefit on the life of a person in which he has no insurable interest. Such a policy or contract of insurance is void and unenforcible on ground of public policy, it being merely a *wagering contract*. . . . The reasoning found in the cases is based upon the presumption that a temptation would be held out to the one taking out the policy to hasten by improper means the time when he should receive the amount of insurance named in the policy. Good faith alone will not suffice to sustain a policy taken out on the life of another by one who has no interest in the continuance of such life . . . .

"The observation of the court in Warnock v. Davis, 104 U.S. 775, 26 L.Ed. 924, in regard to what is an insurable interest has been often cited by text books and by decisions generally. There it was recognized that it was not easy to define with precision what in all cases would constitute an insurable interest so as to take the contract out of the class of wager policies. In a helpful note to the case of Young v. Hipple, 25 A.L.R. 1541, the author has succinctly stated the rule as observed in the Warnock case, which is here worthy of repetition. 'As there is much conflict among the authorities on the general question as to what con-

stitutes an insurable interest, it may be helpful at the outset to bear in mind the statement of the Federal Supreme Court on this question, to the effect that it is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation, for a parent has an insurable interest in the life of his child, and a child in the life of his parent, as does also a husband in the life of his wife, and a wife in the life of her husband; that the natural affection in cases of this kind is considered as more powerful, as operating more efficaciously, to protect the life of the insured than any other consideration; but that in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some *benefit* or *advantage* from the *continuance of the life* of the insured, or otherwise the contract is a mere wager by which the party taking the policy is directly interested in the early death of the insured.' " [Emphasis added.]

This Court has emphasized that absent insurable interest such a contract of insurance is a wagering contract, and stated further that the essential test for validity is that there must be a reasonable ground, founded upon the relation of the parties to each other, either pecuniary or of blood or affinity, to expect some *benefit* or *advantage* from the *continuance of the life* of the insured, not merely an advantage to be gained by his death.

One of the earliest cases on the subject of insurable interest, Helmetag's Adm'x v. Miller, 76 Ala. 183, stated in clear and explicit language:

"No principle of the law of life-insurance is at this day better settled, than the doctrine, that a policy taken out by one person upon the life of another, in which he has no insurable interest, is illegal and void, as repugnant to public policy.—3 Kent's Com. (11th Ed.) 462–63. Such contracts are aptly termed 'wager policies,' and are entitled to no higher dignity, in the eye of the law, than gambling speculations, or idle bets as to the probable duration of human life. There is no limit to the insurable interest which a man may have in his own life; but there are forcible reasons why a mere stranger should not be permitted to speculate upon the life of one whose continued existence would bring to him no expectation of possible benefit or advantage. All wagers, at common law, were not illegal, but only such as were contrary to good morals or sound policy.—Chitty. Contr. 468. The statutes of this State make all contracts by way of gaming or wagering void.—Code, 1876, § 2131; Hawley v. Bibb, 69 Ala. 52. However this may be, wager policies, or such as are procured by a person who has no interest in the subject of insurance, are undoubtedly most pernicious in their tendencies, because in the nature of premiums upon the clandestine taking of human life. As observed in Ruse v. The Mutual Benefit Ins. Co., 23 N.Y. 516, 'such policies, if valid, not only afford facilities for a demoralizing system of gaming, but furnish strong temptations to the party interested to bring about, if possible, the event insured against.' It has been said by another court, in a comparatively recent case, that of 'all wagering contracts, those concerning the lives of human beings should receive the strongest, the most emphatic, and the most persistent condemnation.'—Missouri Valley Life Ins. Co. v. Sturges, 18 Kan. 93, 26 Am.Rep. 761."

This brings us to the question whether the relationship of brother and brother (and, incidentally, brother and sister or sister and sister) is such a relationship that it in itself creates an insurable interest. We know that the relationship of husband and wife constitutes such a relationship per se, Jennings v. Jennings, 250 Ala. 130, 33 So. 2d 251; and while I do not find that this Court has been specifically called upon to

decide whether in every case the relationship of parent and child, or child and parent, in and of itself, with a presumption that is not even rebuttable, gives rise to an insurable interest in either, the overwhelming weight of authority is that this relationship is sufficient to constitute an insurable interest by one in the life of the other (44 C.J.S. Insurance § 204, at 907). But is the relationship of brothers in the same category, or does it depend upon the circumstances of the particular case?

I should here refer to previous decisions of this Court which involve or mention other blood relationships in connection with the question of insurable interest. The following relationships have been held not to create an insurable interest on the basis of such relationship alone. Cousin and cousin, National Life & Accident Ins. Co. v. Alexander, supra; no interest in life of the wife of beneficiary's wife's brother, National Life & Accident Ins. Co. v. Middlebrooks, 27 Ala.App. 247, 170 So. 84; aunt and niece, Commonwealth Life Insurance Co. v. George, supra; aunt-in-law and niece, Liberty National Life Ins. Co. v. Weldon, 267 Ala. 171, 100 So.2d 696; niece and uncle, Bell v. National Life & Accident Ins. Co., 41 Ala.App. 94, 123 So.2d 598.

The opinions in *Middlebrooks* and *Alexander* contain the following identical quotation:

"The general blood relations, recognized by the courts as constituting an insurable interest in human life and health, are discussed in 1 Cooley's Briefs on Insurance (2d Ed.) p. 370 et seq., viz.: (f) Husband and Wife, page 377, 37 C.J. p. 394, § 59; (h) parent and child, page 380, 37 C.J. p. 393, § 55; (i) grandparent and grandchild, page 383, 37 C.J. p. 393, § 56; (j) brothers and sisters, page 383, 37 C.J. p. 393, § 57. The other relations of uncles and aunts, nieces and nephews, and that of cousins, have not been recognized by the courts as within

the degree of blood of an insurable interest. 1 Cooley's Briefs on Insurance, p. 385. (k) Other relationships; 37 C.J p. 394, § 58."

The statement in both cases that the relationship of brothers and sisters is recognized as constituting an insurable interest is followed by a reference to 37 C.J. Life Insurance, § 57, at page 393. I quote this section:

"Brother and Sister. A brother or sister of insured has an insurable interest in the life of the latter, at least where there is a reasonable or well grounded expectation of support of pecuniary aid in time of need, or some other pecuniary interest. It has been both affirmed and denied that a brother or sister has an insurable interest on the ground of relationship alone without regard to pecuniary interest.

"A stepbrother or stepsister has an insurable interest where a moral obligation to support and maintain has been assumed."

We also quote from 44 C.J.S. Insurance § 204, page 906:

"Brother and sister. It has been broadly declared that a brother or sister of insured has an insurable interest in his life, at least where there is a reasonable or well grounded expectation of support or pecuniary aid in time of need, or some other pecuniary interest. It has been both *affirmed* and *denied* that a brother or sister has an insurable interest on the ground of relationship alone without regard to pecuniary interest." [Emphasis added.].

It is stated in 43 Am.Jur.2d, Insurance, § 511, page 540, that the decisions are not in accord on the question whether one has by reason of relationship alone an insurable interest in the life of a brother or sister. This section contains notes showing decisions pro and con. While these two cases, *Middlebrooks* and *Alexander,* contain state-

ments that the relationship of brother and sister gives rise to an insurable interest without more, these statements are pure dicta and are merely quoting the first note in 37 C.J., which I have quoted above.

As already noted, there is a conflict of authority on the effect of the mere relationship of brother or sister. Cases on the subject are also found in the annotation in 45 A.L.R. commencing at page 1181 following the case of Rogers, Admr. v. Atlantic Life Ins. Co., 135 S.C. 89, 133 S.E. 215. In that annotation cases are cited, including the *Rogers* case, as holding that the mere relationship alone is sufficient. There are cases to the contrary, such as Abernathy v. Springfield Mutual Assn., 284 S.W. 198 (Mo.Ct.App.). This is cited in the annotation at page 1184 of 45 A.L.R. along with other Missouri cases, an Indiana case, English decisions, a Connecticut Supreme Court case, a Georgia case, and a Louisiana case. The *Rogers* case, and others, place reliance upon Aetna Life Ins. Co. v. France, 94 U.S. 561, 24 L.Ed. 287.

In *France* the life insurer insured the life of Andrew J. Chew, for the benefit of his married sister. The policy itself acknowledged the receipt of the first premium of $243.50 "in hand paid by Andrew J. Chew" for the benefit of his said sister and provided for an annual premium in a like amount to be paid to the insurer annually thereafter. Nothing was said therein about the sister taking out the policy, it containing only a promise to pay her or her personal representatives upon the death of her brother. There was no evidence that Mrs. France, who was in no way dependent on her brother for support, loaned him money at different times and that she paid premiums on the policy. In reaching its conclusion on the question of insurable interest, the U. S. Supreme Court said:

"... we hold that where, as in this case, a brother takes out a policy on his own life for the benefit of his sister, it is totally immaterial what arrangement they choose to make between them about the payment of the premiums. The policy is not a wager policy. It is devested of those dangerous tendencies which render such policies contrary to good morals."

The Court, therefore, laid stress upon the fact that the policy was procured or taken out by the brother himself and each time the insurer acknowledged that the premiums were paid by him. It is not entirely clear to us whether the Court intended to say that the decision might have been otherwise had the contract between the insurer and Mrs. France expressly shown that it was procured by her and that she was insuring the life of her brother for her benefit. It may be that the cases are not distinguishable, but the language in the opinion to the effect that according to the policy the contract was made solely by the insured might be construed as constituting a significant factor in the Court's decision.

In any case, I think that the relationship alone is not sufficient, that the rule requiring something other than the relation is the sound one and I would so hold. This is based on the rationale that there is but one test for insurable interest—that of a pecuniary interest or some reasonable expectation of monetary benefit from the continuance of the insured's life; and within certain blood or affinity relationships this pecuniary interest or benefit is conclusively presumed. Such relationships are that of husband and wife, parent and child, grandparent and grandchild, and under certain conditions loco parentis relationships. This "conclusive presumption" rule with respect to these relationships does not violate the public policy necessitating insurable interest aimed at preventing homicide and wager contracts. While an extension of this rule to the brother relationship might be permissible as to the homicide aspect, to so extend this rule would facilitate the violation of the second evil which the aforementioned public policy seeks to prevent; vis., wager contracts.

Having adopted the above view, I would hold that the line must be drawn short of the brother relationship, and that insurable interest in such cases should depend upon a pecuniary benefit, or advantage to be gained from the continued life of the insured, which cannot be conclusively presumed, but is subject to proof.

My dissent is limited to the holding of the majority with respect to the insurable interest feature of the life insurance policies, and in all other respects, I concur.

## ON REHEARING

HEFLIN, Chief Justice.

■ On rehearing the thrust of Mutual Savings' new argument is that only four of the justices were in favor of affirmance since only four held for the beneficiary on the entire opinion. It is argued that four justices were in favor of reversal, since one dissented altogether, two dissented as to "lapsation" and one dissented as to insurable interest. Thus the claim is that there was a 4–4 split which would dictate reliance upon Title 13, Section 15, Code of Alabama, 1940, as amended (Recompiled 1958—1971 Cumulative Pocket Parts), which provides for the appointment of a special judge by the Governor, to settle the issue. This court does not agree with the position of Mutual Savings on this point.

In the case of Montgomery Light & Water Power Co. v. Thombs, 204 Ala. 678, 87 So. 205 (1920), Justice Brown, writing for this court, said:

"Anderson, C. J., concurs with the writer in holding that the demurrer should have been sustained to count 2 of the complaint. McClellan, J., holds that the overruling of the demurrer to said count 2 was error, but thinks that it was error without injury in view of the fact that the first count was sufficient to present all the issues, and the evidence was without dispute that the defendant was using its wires in the conveyance of a deadly current of electricity. Sayre, Somerville, Gardner, and Thomas, JJ., constituting a majority, hold that the second count was not subject to the demurrers, and that they were properly overruled.

"Sayre and Gardner, JJ., think that the trial court erred in not granting a new trial because of the improper argument of counsel. Anderson, C. J., and McClellan, Somerville, Thomas, and Brown, JJ., are of the opinion that the trial court was not in error in this respect.

"The result is that a majority of the court do not concur as to reversible error in any one of the points assigned and argued, and it must result in an affirmance of the cause. Cook v. Drew, 3 Stew. & P. 392; 3 Cyc. note 89, p. 405; Shollenberger v. Brinton, 52 Pa. 9–100; Browning v. State, 33 Miss. 47.

"The judgment of the circuit court will therefore be affirmed."

Opinion extended. Application for rehearing overruled.

MERRILL, HARWOOD, MADDOX, McCALL, JONES and FAULKNER, JJ., concur in overruling the application for rehearing on the Title 13, Section 15 issue; however, MERRILL, MADDOX, and FAULKNER, JJ., concur in overruling the application for rehearing on all issues.

HARWOOD and McCALL, JJ., would grant the rehearing only on the "lapsation" feature of the original opinion.

JONES, J., would grant the rehearing only on the "insurable interest" feature of the original opinion.

COLEMAN, J., would grant the rehearing and dissents.