*Nishi GENE, et al.*
Plaintiffs/Appellees
*vs.*
*Rufina HALLIFAX*
Defendant/Appellant
In the Supreme Court of the Navajo Nation

No. SC-CV-71-98
April 5, 2000

Anthony F. Little, Esq., Albuquerque, New Mexico, for the Defendant/Appellant;

Samuel Pete, Esq., Shiprock, Navajo Nation (New Mexico), and F.D. Moeller, Esq., Farmington, New Mexico, for the Plaintiffs/Appellees.

Before YAZZIE, Chief Justice, AUSTIN, and SLOAN (sitting by designation), Associate Justices.

Opinion delivered by AUSTIN, Associate Justice.

This is an appeal of a September 5, 1998 declaratory judgment and injunction by the Window Rock Family Court which declared interests in life insurance proceeds and directed payment of the proceeds to Nishi Gene for the benefit of the insured's minor children.

## I

This case is about a dispute between the children of a decedent, acting through their paternal grandmother, Nishi Gene, and the designated beneficiary of a Navajo Nation employee life insurance policy, Rufina Hallifax ( "Hallifax"). Hallifax, the defendant in the family court and appellant herein, and Hoskie Gene Jr. ("Gene"), the decedent, began an intimate relationship in late 1986 and started living together in summer 1987, while Gene was a student at the ITT School of Technology in Phoenix, Arizona. Gene was an enrolled Navajo, and Hallifax is a non-Navajo Hispanic woman. Gene and his wife were separated sometime thereafter. In 1990, Gene, accompanied by Hallifax, returned to his traditional home area at Forest Lakes, Navajo Nation (Arizona), where the couple

and Gene's children moved into a Navajo Housing Authority rental house. In January 1992, Gene was divorced from his spouse and received custody of the five children of the marriage. After the divorce, Gene, Hallifax, and the children moved to Pinon, Navajo Nation (Arizona) and leased a rental house from the Navajo Housing Authority, qualifying as a "family."

In 1993, Gene was admitted to the Navajo Nation Police Academy for training as a Navajo Nation police officer. As a police cadet, Gene was considered a Navajo Nation employee. On October 26, 1993, he submitted an "Application for Coverage Under the Employer's Health Care Plan" to the Navajo Nation Employee Benefits Program. The application was for health insurance benefits and employee life insurance coverage under an insurance program administered by Fortis Benefits Insurance Company ("Fortis").

The life insurance policy provided death benefits of $60,000 and a double indemnity benefit of $120,000 in the event of accidental death. Gene completed the policy in his own hand. He indicated that he was single and he listed four of his five children as "dependents to be covered." A fifth child and Hallifax's daughter from a prior marriage were added later. The space for "spouse" under the dependents section was left blank. He checked the box for employee life insurance coverage, indicating he wanted that coverage. One section of the form asked for the given name of the "beneficiary, " and Gene filled in the name "Rufina Hallifax." The next box asked for the relationship of the beneficiary to the employee, and Gene wrote "FREIND" [sic]. Gene did not change his designation of Hallifax as his beneficiary when he later added the other two children as his dependents.

Gene graduated from the Navajo Nation Police Academy and became a police officer in February 1994. He continued to live at Pinon with Hallifax and the children until he was assigned to police duties out of Shonto, Navajo Nation (Arizona), which is beyond easy commuting distance from Pinon. Gene leased an apartment in Shonto, while Hallifax and the children continued to live in the Navajo Housing Authority unit in Pinon.

During this period of time, Hallifax cared for Gene's five children. For purposes of the children's medical treatment at an Indian Health Service facility and enrollment in school, Hallifax was listed as a "stepmother," "custodian," "legal guardian," "mother," 'parent" or "parent/guardian" of the children. The couple and the children described themselves as a "family" for purposes of occupancy of Navajo Housing Authority units. Hallifax cared for Gene's children and had physical custody of them during his absence from the home to perform duties as a police officer.

On January 5, 1996, Gene was killed in the line of duty between Shonto and Inscription House, Navajo Nation (Arizona). When Hallifax and Nishi Gene went to the Navajo Nation Employee Benefits Program office to look into employee benefits, they learned that Gene had designated Hallifax as the beneficiary of

his life insurance policy. Fortis prepared to pay Hallifax the double indemnity benefit when Nishi Gene began this declaratory judgment and injunction action to prevent payment of the life insurance proceeds to her. Fortis commenced a separate interpleader action to deposit the life insurance proceeds into court and removed itself from the dispute between Nishi Gene and Hallifax.

Nishi Gene took physical custody of the five children and later sought guardianship of them. She applied for and received $60,000 in death benefits for the children under the Navajo Nation Worker's Compensation Program, and approximately $2,000 per month Supplemental Security Income for the children until they reach the age of majority. She also applied for a $130,000 award from a United States Department of Justice program for survivors of police officers who are killed in the line of duty.

At a trial held on June 2, 1998, the Window Rock Family Court placed the burden of proof upon Hallifax to prove that the insurance contract was valid, particularly with respect to the beneficiary designation. The court concluded that Hallifax failed to meet her burden of proof. The court then found that the application for insurance coverage that Gene had filled out was incomplete and ambiguous "only with regard to the designation of a beneficiary." The court also found that it was "questionable" whether Gene intended that Hallifax should receive the life insurance proceeds. The rest of the application was presumably a valid contract because Gene's dependents had received medical benefits under it. The family court did not make findings of fact to support its legal conclusion that the beneficiary designation was either incomplete or ambiguous or that Gene intended otherwise than what he put in his application.

After finding the beneficiary designation in the application and the resulting contract vague, the court received extrinsic evidence on the relationship of Gene and Hallifax. The family court found that the couple was not married and that they had "no meaningful relationship" because the intimate relationship had terminated prior to Gene's death. The court then resorted to Navajo common law to distribute the insurance proceeds.

The family court awarded the life insurance proceeds to Nishi Gene for the benefit of the surviving children as heirs of Gene's estate by applying the Navajo common law principles that children are central to Navajo life, that there is preference for their support, and that the children of a decedent "should not be forgotten." The family court declared that, as a matter of law, Hallifax was not entitled to the insurance proceeds and enjoined her from receipt of the insurance benefits. The court also directed Nishi Gene to pay Gene's funeral expenses of $7,697.35; that order is not disputed on appeal.[1]

---

[1] The family court exercised its discretion to merge an intestate estate distribution and estate claim with the declaratory judgment and injunction action before it. We do not know if there was a separate intestate probate action.

## II

Upon a review of the family court's final judgment and the arguments of the parties, this Court finds that the only dispositive issue on appeal is whether the family court was correct, as a matter of law, that the beneficiary designation on the insurance application was "vague" or "ambiguous," and accordingly that Gene did not intend or could not have intended that Hallifax should be the beneficiary of the employee life insurance proceeds. The family court correctly approached the problem of insurance coverage by first construing the terms of the policy using the application before receiving extrinsic evidence of Gene's intent, to be determined from an analysis of the relationship and the conduct of the couple toward each other. However, the family court erred by placing the burden of proof on intent in the application upon Hallifax, rather than Nishi Gene and the children, and by concluding that the application was in fact vague or ambiguous and that it did not reflect the obvious intent of Gene. Accordingly, the family court erred when it proceeded to receive extrinsic evidence of Gene's intent, measured by his relationship with Hallifax, and when it applied Navajo common law child preference policies after finding that there was no "meaningful relationship" between Gene and Hallifax at the time of Gene's death. It also erred when it failed to make findings of fact to support the legal conclusion that the application was vague or ambiguous. We do not see an "incomplete" portion of the application.

## A

While this Court has been invited to apply Navajo common law principles to this domestic relations case, we must first do a standard contract analysis, given the existence of an insurance contract. While the definition of insurance is not settled, and the question of what it may be can differ depending upon the context of a given case, we are comfortable in concluding that "[a]n insurance contract generally involves an agreement by which one party (usually identified as an insurer) is committed to do something which is of value for another party (usually identified as an insured or beneficiary) upon the occurrence of some specified contingency." R. KEETON & A. WIDISS, INSURANCE LAW § 1.1(b) (1988). In the context of this case, Fortis is the "insurer" which was committed to do something of value, Gene was the insured, and Hallifax was the beneficiary named in the application. The parties agree that the only relevant document was the application for insurance that Gene filled out on October 26, 1993.

Insurance is a contract, *Benalli v. First Nat'l. Ins. Co. of America*, 7 Nav. R. 239, 334 (Nav. Sup. Ct. 1998), and basic contract principles must be used to interpret such a contract. In this particular case, the application for insurance is relevant to find Gene's intentions as an applicant for insurance, and Fortis' understandings when accepting the application. A great deal of contract interpretation involving insurance coverage is governed by insurance industry trade practices, and generally, an insurance application is an offer to make an

insurance contract which must be accepted by the insurer before there is a contract. R. KEETON & A, WIDISS 2.1(c). While the insurer's acceptance of the insurance application offer is usually done by delivery of an insurance policy, *id.* § 2.l(c) (3), that is not required here.

In this particular case, there is no dispute that there was an insurance contract; the parties are at issue over what it means. Gene, Hallifax, and the children all received health insurance benefits that flowed from the insurance contract which was the product of the application, so the only dispute is over the meaning and scope of the term "beneficiary" in the contract.

This Court previously handled an insurance claim alleging ambiguity in the terms of the insurance policy. We said that whether or not there is an ambiguity depends upon "what the parties intended the contractual language to mean." *Benalli*, 7 Nav. R. 335. In this case, the parties are Gene, as an applicant for insurance coverage, and Fortis, as the insurer which accepted the application. Accordingly, we must first look at the relevant documents which indicate whether the parties had a "meeting of the minds," *Hood v. Bordy*, 6 Nav. R. 349 (Nav. Sup. Ct. 1991), on the meaning of "beneficiary." A beneficiary is "[t]he person entitled to take proceeds on death of insured." BLACK'S LAW DICTIONARY 157 (6th ed. 1990).

Nishi Gene would have this Court interpret the application using a microscope. She points to the application form's title as one for health care only; she focuses upon the lack of a named spouse; she says that we do not know what Gene meant when he ticked off "dependent life" as separate coverage; and the form does not connect the checkoff box "Employee life" with the term "beneficiary." Nishi Gene's approach ignores the standard canon of construction that a court must read a document between its four corners, or examine a document as a whole to find the intent of the contracting parties. In an insurance context, a court may need to review several documents, but that is not necessary here.

Gene was not an unsophisticated insurance applicant. He went to the Navajo Nation Employee Benefits Program office as an employee fairly fresh from Phoenix ITT School of Technology. There is no indication in the record that he had any problems reading or speaking standard English. The term "beneficiary" is not a mysterious one, and the insurance application form makes a clear distinction between the "dependents to be covered (the children)" and the "beneficiary." It is clear that Gene intended for Hallifax to be the beneficiary of his life insurance policy. He wrote Hallifax's name in the "beneficiary" box of the policy application, and he described their relationship in the adjacent box.

The test for ambiguity in this case is whether the parties to the insurance contract reached a meeting of the minds on what the term beneficiary meant. When Gene reached the space on the form which used that term, he wrote in the name "Rufina Halllfax," and then he indicated his relationship with her. Gene

made an offer to Fortis to form a contract which included life insurance and Fortis clearly accepted the offer with Hallifax as the intended beneficiary. We see the acceptance in an indication under the section, "For Company Use Only," that the application was processed, and thus accepted, on October 29, 1993. Moreover, the fact certain health insurance benefits were paid out is further proof that the application was processed and accepted.

B

The family court erred in placing the burden of proof upon Hallifax to prove that she was the intended beneficiary of the life insurance policy when she was clearly indicated as the named beneficiary. "Normally the burdens of proof and persuasion are placed on the party asserting a claim or defense." R. KEETON & A. WIDISS § 72 e 2 ii. In this case, the acceptance of Gene's application raised a presumption that there was a valid contract of insurance with Hallifax as the named beneficiary. Fortis accepted Hallifax's claim to the insurance proceeds and was prepared to pay her the benefits when Nishi Gene challenged that determination by filing this action.[2] Therefore, Nishi Gene, as the person asserting a claim to the proceeds, had the burden of proving to the family court that the policy term as to the beneficiary was vague or that Hallifax was otherwise not entitled to the insurance proceeds.

Next, the family court found that there was no "meaningful relationship" between Gene and Hallifax at the time of Gene's passing. On that basis, the family court concluded that Hallifax did not have an "insurable interest" in Gene's life or property, and thus, could not claim the insurance proceeds.

The insurable interest doctrine provides that in general, the beneficiary of an insurance policy must have some interest in or relationship to the thing or person being insured. *See Mutual Savings Life Ins. Co. v. Noah*, 282 So.2d 271 (Ala. 1973). However, the general rule does not apply when a person procures a policy insuring his or her own life and pays the premiums for the policy. See *id.* In such cases, the insured is said to have an unlimited insurable interest in his or her own life, and, absent statutory restrictions to the contrary, may designate any person as the beneficiary of the policy. *See id.* The beneficiary need not have any particular relationship to the insured.

In this case, there is no insurable interest problem. Gene procured the life insurance policy for himself and the premiums were paid out of his employment salary. Further, the Navajo Nation Code does not restrict the class of persons who can be named as beneficiaries in life insurance policies. Accordingly, Gene was permitted to name anyone, including Hallifax, as his beneficiary.[3]

---

2  Fortis responded in a separate action by depositing the Insurance proceeds Into family court for Nishi Gene and Hallifax to contest.

3 We note that *Apache v. Republic Nat'l Life Ins. Co.*, 3 Nav. R. 250 (W. R. Dist. Ct., 1982), is distinguishable from this case, and therefore, does not control our conclusions here.

The question in insurance cases is the intent of the insured, and Nishi Gene did not affirmatively show that the decedent's intention was other than what he stated in the application for insurance. As a general matter, Navajo Nation employees who name beneficiaries in a wide range of relationships should feel free to make their own free choice, so long as the choice is consistent with law and public policy.

Upon the foregoing considerations, the September 5, 1998 judgment of the Window Rock Family Court is reversed and this cause remanded to that court for entry of an order awarding the life insurance proceeds to Rufina Hallifax.